(No. 23300.—

LOUIS ALLEGRETTI *et al.* Appellees, *vs.* THE MURPHY-MILES OIL COMPANY, Appellant.

*Opinion filed February 19, 1936—Rehearing denied April 15, 1936.*

ORR and FARTHING, JJ., dissenting.

JOHN W. FREELS, and CHARLES E. GREEN, for appellant.

LOUIS WILSON, DENEEN, HEALY & LEE, and MAYER GOLDBERG, (POPPENHUSEN, JOHNSTON, THOMPSON & RAYMOND, EDWARD R. JOHNSTON, HENRY J. BRANDT, CHARLES S. DENEEN, MARSHALL A. PIPIN, and MAX BLOOMSTEIN, JR., of counsel,) for appellees.

Mr. CHIEF JUSTICE STONE delivered the opinion of the court:

Appellant complains of the judgment of the Appellate Court for the First District affirming the judgment of the circuit court of Cook county against it, in damages, in the sum of $9533. The facts as to proof of the events on which the declaration was based are not in dispute.

Appellees, who are in the business of making Neon signs, occupied the basement and first floor of a building owned by the Norwin Building Corporation. The landlord heated the building by use of an oil burner. A 1000-gallon tank in the furnace room served as storage space for fuel oil. Oil was put into this tank through a two-inch intake pipe extending through the outside basement wall. An air-vent pipe from the tank to the outside of the building extended through the outer wall, within about one foot of the intake pipe. Prior to March 10, 1931, the date of the accident, appellant had been selling fuel oil to the owners of this building for about three years, each time filling the tank through the intake pipe. On that day, pursuant to a call from the janitor, one of appellant's employees brought a truck containing 822 gallons of fuel oil. He inquired of the janitor whether there was room in the tank

for the 822 gallons and, receiving a reply in the affirmative, he connected the truck tank with the intake pipe by means of a hose and proceeded to pump the oil from the truck into the storage tank. When about 600 gallons of the oil had been pumped into the tank an explosion occurred. The driver shut off the pump and told the janitor, who was standing near, to go into the basement and shut off the oil burner. No fire occurred but the end of the tank was blown out. The force of the explosion blew off its hinges, the door connecting the boiler room with appellees' work shop in which a large number of completed Neon signs were stored. Many of these signs were destroyed by the force of the explosion. Examination disclosed that the explosion was caused by the clogging up of the vent pipe, thus preventing the escape of air as the oil was pumped into the tank. There is some difference in the testimony as to whether it was clogged with ice or with dirt. For purposes of the questions involved here that is immaterial.

Appellees brought suit against the owners of the building and the appellant for damages to material broken and lost by reason of the explosion. The trial was before the court without a jury. At the close of the evidence the Norwin Building Corporation, on its motion and without objection from counsel for appellees, was found not guilty and judgment was entered against appellant.

The first question presented here is whether there lay on the appellant any duty to inspect the facilities for conveying the fuel oil from its truck into the tank in the basement. It is conceded no test or inspection of the vent pipe was made by appellant's employee. These facilities were installed by the owners of the building. Appellant argues that there is no evidence which, taken with all reasonable intendment favoring appellees' claim, which shows, or tends to show, that such a duty existed, but that, on the other hand, the undisputed evidence discloses that as

a matter of law there was no such duty imposed on appellant. This question goes to the root of the case and will be first considered.

Appellees say that every person owes a duty to every other person to exercise ordinary care to guard against injury which may naturally flow as a reasonable, probable and foreseeable consequence of his act, and argues that on application of that principle this comes within *Wintersteen* v. *National Cooperage Co.* 361 Ill. 95, *Colbert* v. *Holland Furnace Co.* 333 id. 78, and *Baird* v. *Shipman,* 132 id. 16. The *National Cooperage Co. case* had to do with an injury arising from certain barrels falling out of a railway boxcar. The cooperage company undertook to dunnage the car door in such a manner that when the door was opened the barrels could not fall out. It used material of its own selection which was patently defective. It also used its own labor. It was held that on such facts, as a rule of law, a duty lay on the cooperage company to properly' dunnage the car. A like principle was involved in the other two cases cited.

In this case appellant neither owned, controlled nor installed the storage tank or the intake or the vent pipe. Appellant had been delivering oil to this tank once or twice a month during three winters, and in severe weather more frequently. The vent pipe, so far as appellant's driver knew or had any notice of, was not, at the time of any prior delivery, clogged or stopped up, and no difficulty was experienced in delivering oil. Appellees say that as the evidence shows that the driver of the truck occasionally, in delivering oil, put his hand over the vent pipe to see if air was coming from it, his failure to do so on this occasion was a failure to do that which he was required to do, and so the fault lay with the appellant. Of course, appellant's driver could have, by placing his hand over the vent pipe, discovered that no air was coming from it, but the test of liability is not what he could have done to prevent

the accident but what, in the exercise of due care in delivery of the oil, he was bound to do. The evidence is clear that he had not noticed the air was not coming from the vent pipe. He testified that he had no knowledge that this was the only vent to the tank.

Appellees also say that it is not necessary to show that appellant's driver had actual notice for the reason that it should be clear to the ordinarily prudent person that if air was not coming from the pipe an accident would result, and appellant's driver, had he exercised ordinary care, would have discovered that condition. Their counsel cite *Munsey* v. *Webb*, 231 U. S. 150, 58 L. ed. 162. In that case an employee was being taken to an upper floor of a building in an elevator equipped with a collapsible door which was open at the time of the accident. The boy in charge of the elevator did not have his arm across the opening as he was instructed to do when the door was not closed. The employee fell as the elevator went up and he was caught between one of the floors of the building and the floor of the elevator. There, in addition to the failure of the elevator operator to follow the instructions, the possibility of an accident was clear to the ordinarily prudent person. In this case there was nothing in the appearance of the vent pipe on this occasion that in any way differed from its appearance on the numerous former occasions when oil was pumped into the tank. The substance clogged in the pipe was not visible to the naked eye. The case cited is not applicable here.

The existence of liability on the part of appellant in this case turns upon the question whether there was any duty on the part of the appellant to inspect the air vent. Appellees' counsel say that the issues as to the proximate cause of the injury and whether appellant breached its duty of ordinary care, were questions of fact settled by the judgment of the Appellate Court. Whether there was any duty resting upon the appellant to inspect these pipes

is, however, a question of law. As we have stated, there is no testimony in the record tending to indicate that appellant had notice that the vent pipe was clogged or that it was the only vent. The rule is, that where one furnishing bulk products does not install the receptacle for those products, or the pipes connecting such receptacle with the source of supply necessary to fill them, and does not own or have control over them, he is not responsible for their condition or their maintenance and cannot be held liable for injuries caused by an accident arising out of a defective condition of such receptacle or its equipment, in the absence of knowledge of such defect. *Clare* v. *Bond County Gas Co.* 356 Ill. 241; *Windish* v. *People's Gas Co.* 248 Pa. 236, 93 Atl. 1003; *Smith* v. *Pawtucket Gas Co.* 24 R. I. 292, 96 Am. St. Rep. 713; *Termaine* v. *Halifax Gas Light Co.* 11 U. S. 394.

It is a general and sound proposition of law that one's duty extends no further than his right, power and authority to carry out such duty. It cannot be argued that appellant's driver had a right or duty to go upon the premises of the Norwin Building Corporation for the purpose of inspecting its pipes and tank, except upon the invitation, license or permission of the owner. *Clare* v. *Bond County Gas Co. supra; Triplett* v. *Alabama Power Co.* 213 Ala. 190, 104 So. 248; *Pernick* v. *Central Union Gas Co.* 228 N. Y. 594.

Appellees' counsel do not attempt to show wherein this case does not fall within the *Bond County Gas Co. case* but cite *Schmeer* v. *Gaslight Co.* 147 N. Y. 529, 42 N. E. 202, as authority for their contention that it was incumbent on the appellant's employee to test the vent pipe before putting in the fuel oil. An analysis of the New York case shows it is not analogous in fact to the one before us. In that case the gas company permitted pipes to be connected with, and gas delivered to, a new building theretofore unoccupied. No inspection was made to determine whether

pipes in the building were ready for the receipt of such gas. In fact they were not and gas escaped into the building causing damage. While holding the gas company liable for the accident which occurred, it is there pointed out that as the company had no control over the piping, did not put it in and was not consulted about it, the principle on which it might be held liable, in cases of that character, for an accident occurring at the time of the first delivery of gas, where no precautions were taken at all, is simply that it would have the right to refuse to turn on, or permit others to turn on, the gas until properly assured of the condition of the piping in other portions of the building. That court further said: "Having become assured of it, (the safe condition of the pipes,) and the gas being on, it would not seem that the company ought further to be regarded as liable for the continuous good condition of the piping." The rule in this State applicable to cases such as the one before us, has been announced in the opinions of this court herein cited.

In this case there is no evidence that the appliances were new and untried. This appellant had been supplying oil for a considerable period of time through them without accident or difficulty. There is no charge in the declaration, nor evidence in the record, to indicate that the oil was pumped into the tank in a negligent manner. We are of the opinion that in this case the evidence shows that no duty lay upon appellant to inspect the vent pipe and that, therefore, no liability against it arose from the accident. As we have stated, the owner of the building was found not guilty. This judgment cannot be sustained.

The judgment of the Appellate Court is reversed.

*Judgment reversed.*

ORR and FARTHING, JJ., dissenting.