J. Paul Masters and Susan T. Masters, Plaintiffs-Appellants, v. Central Illinois Electric & Gas Co.; Frank Wojcik and A. F. Wojcik, Partners, d/b/a Wojcik Construction Co.; A. Reyner Eastman et al., Partners, d/b/a Gregory Excavating Company, Defendants. Central Illinois Electric & Gas Co.; Frank Wojcik and A. F. Wojcik, Partners, d/b/a Wojcik Construction Co., and A. Reyner Eastman, Appellees.

**Gen. No. 10,855.**

Second District.

October 18, 1955.

Rehearings denied November 10 and 15, 1955.

Released for publication November 16, 1955.

Pedderson, Menzimer, Carl & Conde, of Rockford, for appellants; L. W. Menzimer, and Dale F. Conde, both of Rockford, of counsel.

Hyer, Gill & Brown, of Rockford, for defendant-appellee Central Illinois Electric & Gas Co.; Stanton E. Hyer, of Rockford, of counsel.

Victor & Ghent, of Rockford, for defendants-appellees Frank Wojcik and A. F. Wojcik, d/b/a Wojcik Construction Co.; Alex J. Victor, of Rockford, of counsel.

Knight & Knight, of Rockford, for defendant-appellee A. Reyner Eastman; William D. Knight, of Rockford, of counsel.

MR. JUSTICE EOVALDI delivered the opinion of the court.

This action for $60,000 was brought by the plaintiffs to recover damages occasioned by a gas explosion which demolished plaintiffs' newly constructed dwelling house and contents. The plaintiffs allege that the gas explosion was proximately caused by the negligence of the defendants who are Central Illinois Electric & Gas Co., which installed the gas line, Frank Wojcik and A. F. Wojcik, partners, d/b/a Wojcik Construction Co., who are the contractors who built the house, A. Reyner Eastman, who is the architect who supervised the construction, and Aubrey J. Gregory and Hilmer T. Anderson, partners, d/b/a Gregory Excavating Company, whose employee struck the gas service pipe with his grading machine, causing the pipe to be pulled loose in the basement of the house and causing the explosion.

At the close of plaintiffs' case the trial judge directed a jury verdict in favor of Wojcik Construction Co. and A. Reyner Eastman. At the conclusion of the trial the jury rendered a verdict in favor of plaintiffs and against the defendant, Central Illinois Electric & Gas Co., in the sum of $42,000, on which judgment was rendered on January 2, 1955. Said jury found Gregory Excavating Company not guilty. Defendant, Central Illinois Electric & Gas Co., filed a motion for a judgment notwithstanding the verdict of the jury and for new trial and both motions were granted by the trial judge on February 4, 1955. Plaintiffs filed a motion for a new trial as to Frank Wojcik and A. F. Wojcik, partners, d/b/a Wojcik Construction Co., A. Reyner Eastman and Aubrey J. Gregory and Hilmer T. Anderson, partners, d/b/a Gregory Excavating Company. The trial court granted said motion as to Gregory Excavating Company, and the petition for leave to appeal from said order granting a new trial was denied by our Court. The trial court denied the motion as to Wojcik Construction Co. and A. Reyner Eastman and entered judgment, from which this appeal is taken.

Plaintiffs' theory of the case is that the trial judge erred in granting the motion by Central Illinois Electric & Gas Co. for judgment notwithstanding the verdict and in granting it a new trial as there was ample evidence on which to base the verdict of the jury. Plaintiffs further contend that the trial court erred in directing verdicts in favor of Wojcik Construction Co. and A. Reyner Eastman at the close of plaintiffs' case, as, they argue, there was ample evidence introduced by the plaintiffs upon which the liability of said Wojcik Construction Co. and A. Reyner Eastman should have been determined by the jury.

The amended complaint is in four counts:

Count I is against the defendant, Central Illinois Electric & Gas Co., and it alleges ownership of the property in question in the plaintiffs; that plaintiffs

contracted with Frank Wojcik and A. F. Wojcik, partners, d/b/a Wojcik Construction Co., as the general contractor to build for plaintiffs a dwelling house at a cost of $44,865, subject to extras and credits; that the plans and specifications for said dwelling house were drawn for plaintiffs by defendant, A. Reyner Eastman, a duly licensed architect, and he was employed by plaintiffs to supervise and approve the construction of said dwelling house as it progressed at a cost to plaintiff of 7% of the cost of the house; that as a part of said plans, said A. Reyner Eastman included a topographical map or plan showing the heights of the finished grading, which plan or map was available to all defendants herein; that Central Illinois Electric & Gas Co. at all times mentioned was a corporation engaged in the business, among others, of supplying natural gas to dwelling houses in and near the City of Rockford, Illinois, and as a part of said business installed pipes for the carrying, transportation and conveyance of said natural gas to said dwellings; that at all times the plaintiffs were in the exercise of due care for the safety of said dwelling house and the premises; that in the month of April 1954, pursuant to a request by plaintiff, J. Paul Masters, the Central Illinois Electric & Gas Co. installed a ¾-inch pipeline from Brookview Road into the basement of plaintiffs' dwelling house and installed a gas meter and turned natural gas into said ¾-inch pipe, so that said natural gas under pressure passed into the said dwelling house and to the gas-fired furnace that was located in the basement of said dwelling; that at said time and place the Central Illinois Electric & Gas Co., through its agents, was notified that grading was to be done in the future and that the said gas pipe should be installed deep enough so as not to interfere with said grading; that Aubrey J. Gregory and Hilmer T. Anderson, partners, d/b/a Gregory Excavating Company, were hired to grade the said premises in accordance with the topographical plan or map drawn

353

by A. Reyner Eastman; that on May 22, 1954, one Zelmer Ware, an employee of said Aubrey J. Gregory and Hilmer T. Anderson, d/b/a Gregory Excavating Company, was sent by them to the premises to complete said finished grading and was instructed by Frank Wojcik and also by A. Reyner Eastman as to the desired grading and the level to be attained; that pursuant to said instructions said Zelmer Ware operated a tractor with an earth-moving blade on it and cut the earth from the then existing grade to the desired grade; that in the process of so cutting the earth and moving it with said tractor, the blade thereof struck the said ¾-inch gas pipe at a point approximately 20 feet south of the south foundation of the dwelling and approximately in the center of said lot, and moving said pipe so that it became disconnected in the basement of said dwelling house and allowed said natural gas to escape into said basement; that said gas pipe was uncovered where the grading machine had struck it and the pipe lay exposed to view; that said Zelmer Ware left the premises shortly after striking said gas pipe; that at approximately 4:15 p. m. on said day the natural gas which had escaped from the disconnected gas pipe exploded in plaintiffs' dwelling house and from the force thereof totally demolished the said dwelling house and the contents thereof; that the defendant, Central Illinois Electric & Gas Co., owed a duty to plaintiffs to install a natural gas pipe at a safe depth beneath the finished grade, but that said defendant negligently and carelessly failed to install said gas pipe at a safe depth beneath the finished grade and negligently and carelessly installed said gas pipe at a depth where it was struck by the tractor blade of said Zelmer Ware while he was moving earth at the proper depth as shown by said topographical map; that said carelessness and negligence contributed proximately to the explosion which demolished plaintiffs' dwelling house.

354

Count II of the complaint was against the defendants, Aubrey J. Gregory and Hilmer T. Anderson, partners, d/b/a Gregory Excavating Company, and in addition to realleging certain material portions of Count I, alleged that said defendants had a duty to inquire the depth and location of said gas pipe but negligently failed to do so and further negligently and carelessly, through their agent, operated said tractor so that the blade thereof struck said gas pipe and moved the same, as aforesaid, and negligently and carelessly failed to investigate the damage to said gas pipe at said time and place, and negligently and carelessly failed to immediately inspect said dwelling house for gas leaks and negligently and carelessly failed to notify the Central Illinois Electric & Gas Co. of the damage to said gas pipe, and that the said carelessness and negligence of said defendants at said time and place proximately contributed to said explosion which demolished plaintiffs' dwelling house.

Count III of the amended complaint is against Frank Wojcik and A. F. Wojcik, partners, d/b/a Wojcik Construction Co., and in addition to realleging certain material portions of Count I alleges that said defendants, as the general contractor, had a duty to inspect the installation of said gas pipe to see that it would not interfere with the final grading and to see that it was installed at a safe depth below the final grade, but defendants negligently and carelessly failed to inspect the position of said gas pipe and negligently and carelessly failed to see that it was installed at a safe depth below the final grade, and negligently and carelessly instructed said Zelmer Ware to cut said earth without ascertaining that the tractor blade would clear the said gas pipe, and that said carelessness and negligence contributed proximately to the explosion which demolished plaintiffs' dwelling house.

Count IV of the amended complaint is against the architect, A. Reyner Eastman. In addition to realleg-

ing certain material allegations in Count I, Count IV charges that the defendant, Eastman, as the architect supervising said construction, had a duty to inspect the installation of said gas pipe to ascertain that it would not interfere with the final grading of said premises, and to ascertain that it was located at a safe depth below the final grade, and that he undertook as part of his duties the supervision of the grading, but that said defendant negligently failed to inspect the gas pipe and negligently failed to see that it was installed at a safe depth below the final grade, and negligently and carelessly instructed said Zelmer Ware to cut and move said earth without ascertaining that the tractor blade would clear the said gas pipe and that the said carelessness and negligence of said defendant at said time and place proximately contributed to said explosion which demolished plaintiffs' dwelling house.

Separate answers were filed by each defendant, trial was had, and no question is raised as to the pleadings.

As to Central Illinois Electric & Gas Co., we are of the opinion that the trial court erred in granting the motion for judgment notwithstanding the verdict, as said motion presents the single question whether there is in the record any evidence which, standing alone and taken with all its intendments most favorable to the party resisting the motion, tends to prove the material elements of his case. Wiik v. Hagen, 410 Ill. 158, 161; Seeds v. Chicago Transit Authority, 409 Ill. 566; Lindroth v. Walgreen Co., 407 Ill. 121, 130; Gorczynski v. Nugent, 402 Ill. 147, 156; Weinstein v. Metropolitan Life Ins. Co., 389 Ill. 571, 576. We are not concerned with the weight or credibility of the evidence, but only with the narrow question whether there is any evidence, together with all reasonable inferences to be drawn therefrom, which would justify submission of the case to the jury. Lindroth v. Walgreen Co., supra, at p. 130. In passing on a motion for a judgment notwithstanding the verdict, the court must consider all

356

the evidence with all reasonable inferences therefrom in the aspect most favorable to the party against whom the motion is directed, and all contradictory or explanatory circumstances must be rejected. Baker v. City of Granite City, 311 Ill. App. 586.

From the evidence in this case it appears that plaintiffs made a contract with defendant, Central Illinois Electric & Gas Co., to lay a gas line and to install a gas furnace for plaintiffs' house. Plaintiffs were building a dwelling house on a lot known as 3622 Brookview Road in Edgebrook Subdivision in the suburbs of Rockford, Illinois, and about the 1st of April 1954, when it came time for the installation of gas, plaintiff, J. Paul Masters, called the defendant gas company and requested that the gas service be installed. Within a week thereafter, the Central Illinois Electric & Gas Co. employees, under the charge of a foreman, came to install the gas service line to plaintiffs' house. At that time, no grading had been done on the lot and it was uneven and bumpy. The lot is approximately 100 feet wide and the house sat facing south approximately 100 feet north from the curbline of Brookview Road. The lot sloped directly down from the street into the house and the front porch of the house was approximately 6 feet lower than the level of the street. There was a 2-foot off-set or step-off for a distance around the front of the house where the workmen had shoveled the dirt back to have room to work. There was a hump or mound of dirt in the middle of the front yard which had been deposited by the excavators. The installation of the gas pipe had progressed about halfway from the street when Frank Wojcik went to the foreman of the gas company crew and told him that they were going to grade the slope from the house down again and up again on account of the hill. "I told him to be sure to have pipe deep enough. As I remember, he told me we will do the best we can." The construction of the

dwelling house continued, and on May 22, 1954, the day of the explosion, the house was 90% complete.

Taking the evidence in the light most favorable to the plaintiffs in this case, it must have been obvious to the defendant gas company that grading would have to be done to correct conditions and that the grading operation would involve a substantial lowering of the grade. The gas company foreman was an experienced man in these installations, and it is undisputed that Frank Wojcik told him on the day of the installation of the gas pipe that there was to be a grading down of the slope, and then up at the house, and to put the pipe deep enough. The gas company employees did not ask what the grading was to be, did not inquire concerning the plan for final grading, and did not request to see the topographical map at the time the pipe was installed. Even without the other elements of notice, the gas company employees should have known by looking at the level of the front portion of the house that the pipe would be on top of the ground when grading was done. As the gas line approached within a few feet of the house, it dipped sharply down in order to enter the basement at a point only 2½ feet below the ground level. This should have been an indication to the gas company employees that they were not deep enough.

In dealing commercially with a dangerous commodity such as gas, the defendant must exercise a high degree of care. In the case of McClure v. Hoopeston Gas & Electric Co., 303 Ill. 89, 97, the court said:

"The authorities have more than once said that 'a company dealing with a substance so dangerous as gas must be held to a high degree of care and the exercise of every reasonable precaution in guarding against accidental injury.'"

The gas company has maintained that its negligence furnished a condition and that the action of the grader in striking the pipe was an intervening cause. A similar argument was made in the McClure case, supra,

358

and in discussing the matter at page 99 the court, quoting with approval from another case, said:

" 'The argument is that there was an efficient and direct cause intervening between the negligence of the company and the injury to the appellant; that the ignition was this proximate cause, and that the alleged negligence of the company only furnished the condition or gave rise to the occasion by which the injury was made possible. [Citing authorities.] The principle enunciated in the cases cited is not applicable to relieve a party from such results of his negligence as ought reasonably to have been foreseen. A multitude of definitions has not made the meaning of the term "proximate cause" entirely clear in every possible situation, and it is affirmed by a distinguished author that no fixed and immediate rule can be applied to all cases. . . . A cause of injury is not too remote if, according to the usual experience of mankind, the result ought to have been apprehended.' In a somewhat similar case, Moore v. Lanier, 52 Fla. 353, the court said (p. 360): 'In an action brought to recover damages for property destroyed through the negligence of another the declaration should allege facts showing the negligence complained of to be a proximate cause of the injury sustained. Proximate cause is that which naturally leads to or produces, or contributes directly to producing, a result such as might be expected by any reasonable and prudent man as likely to directly and naturally follow and flow out of the performance or non-performance of any act. [Citing authorities.]' " And then continuing on page 100, quoting with approval from the last mentioned case: " 'If the gas was present because the defendant did negligently and carelessly fit, install and equip the service pipe in the storeroom and it became ignited without the plaintiff's negligence contributing thereto and an explosion occurred, the defendant is liable for the damages resulting from the explosion even though he was not respon-

359

sible for the ignition.' " And then again at page 101, the court, quoting with approval from another case, said, " 'If the consequences follow in unbroken sequence from the wrong to the injury without an intervening efficient cause, it is sufficient if at the time of the negligence the wrongdoer might by the exercise of ordinary care have foreseen that some injury might result from his negligence. [Citing authorities.] The rule as to what constitutes proximate cause was considered in the case of Atchison, Topeka and Santa Fe Railroad Co. v. Stanford, 12 Kan. 354, and it was said: "Any number of causes and effects may intervene between the first wrongful cause and the final injurious consequence, and if they are such as might with reasonable diligence have been foreseen, the last result, as well as the first and every intermediate result, is to be considered, in law, as the proximate result of the first wrong cause." ' "

In the case of Aurora Gas Light Co. v. Bishop, 81 Ill. App. 493 (2nd District), where the gas company was sued for injuries by a person hurt in a gas explosion, the gas lines were damaged by the settling of dirt from a sewer installed by the city over the gas line. The court holds on page 500: "Appellant was dealing with a dangerous agent. . . . It was therefore its duty to protect the public as far as possible from all dangers attending the use of the same. In Smith vs. Boston Gas Light Co., 129 Mass. 318, it was said: 'The defendant was authorized by law to lay down pipes and convey gas under the surface of the public streets and was bound to use proper care and prudence in the conduct of its business, having reference to the delicate and dangerous character of the material in its charge. It was especially bound to exercise this care in the proper location, structure and repair of the pipes, so that there would be no escape of gas dangerous to life and health.' "

In the Aurora case, supra, the gas company contended that it should not be held to the same strict accountability with which it would otherwise be charged, for the reason that the breaks were caused by the negligent manner in which the city filled the sewer trench and the consequent settling of the earth in the same. Answering this contention, the court on page 501 stated: "In this case appellant must have known that the location of the sewer trench across its service pipes and the manner in which the same was filled in by the city, could not but result in injury to its pipes. It was therefore its duty to see that its pipes were properly protected from injury. Failing in that duty, appellant must be held responsible for such damages as result to the property of others by reason of such neglect."

Other cases from foreign jurisdictions have had the problem of damages arising from the laying of a gas pipe at a shallow depth as being the proximate cause of injuries from a gas explosion. Such a case is Manufacturers' Light & Heat Co. v. American Telephone & Telegraph Co. (CCA), 5 F.2d 572, where the gas company failed to bury its pipe 24 inches deep as required by statute and a truck ran over it while driving along the road, and the truck was blown up and the judgment for the plaintiff was affirmed.

In McWilliams v. Kentucky Heating Co., 166 Ky. 26, 179 S. W. 24, the gas company's pipe was buried along a county road at an average depth of about one or two feet below the surface of the earth. At the time and place of the accident the dirt or earth which covered this gas pipe had either worn or washed away, or the mains had been originally placed near the surface, so that the top of the gas main was only an inch or two below the surface of the roadbed. Appellant-plaintiff, at the time he sustained the injuries complained of, was employed by the county as the engineer of a steam

361

roller in the reconstruction and maintenance of the county road. While running the roller down the dirt road, the spikes in one of the wheels punched holes in an iron gas pipe that had been placed in the road, and when these holes were so made, the escaping gas came in contact with the fire in the engine, causing an immediate explosion and the envelopment of the engine in flames. When the explosion occurred and the flames surrounded the engine, appellant was severely burned and injured, and to recover damages for the injuries so sustained, he brought the suit. His appeal was from the action of the trial court in directing the jury to return a verdict in favor of appellees. In support of the ruling of the lower court, appellees contended that the law did not impose on them the duty of maintaining gas pipes so far below the surface, or sufficiently strong or sound to prevent same being punctured by the spikes in the wheels of a machine of the character operated by appellant, and further, that the proximate cause of the gas escaping was the independent, intervening act of the appellant in operating the roller with the spikes in the wheels over the dirt road, an act which could not have been reasonably anticipated by appellees. They further argued that the officials of the county knew that the gas main was in the road, and should have notified appellant if he did not know of its existence, and this knowledge on the part of these officials relieved appellees from liability.

The Kentucky Court of Appeals reversed the cause for a new trial stating: "We think the case should have gone to the jury, and that the court erred in ruling as a matter of law that the appellant failed to make out a case for a jury."

■ The question of negligence of the defendant was a matter for the jury to pass on. The record here presents sufficient evidence to go to the jury and we are of the opinion that the motion for judgment notwithstanding the verdict was improperly granted, and

that the court erred in entering judgment against plaintiffs and in ordering that plaintiffs take nothing by their suit against the defendant, Central Illinois Electric & Gas Co., a corporation.

 The plaintiffs argue that the trial court erred in granting the motion for new trial filed by the defendant, Central Illinois Electric & Gas Co. In reviewing an order of the trial court granting a new trial where the question of the weight of the evidence is involved, the reviewing court will not disturb the order in the absence of an affirmative showing of a clear abuse of discretion. Warren v. Patton, 2 Ill.App.2d 173, 179; Eckhardt v. Hickman, 349 Ill. App. 474, 483; Matkins v. Fenorsky, 348 Ill. App. 125, 129; Chapman v. Baltimore & O. R. Co., 340 Ill. App. 475, 499, 500. The matter of granting a new trial is in the sound discretion of the trial judge. Parke v. Lopez, 306 Ill. App. 486; Ledferd v. Reardon, 303 Ill. App. 300; Josate v. Mack, 302 Ill. App. 246. As was said in Josate v. Mack, supra, at p. 248: "Necessarily, the trial court should have the discretion to decide with finality whether a new trial is necessary in the interests of justice, as it is in his power to observe the multiplicity of situations as they arise during the progress of the trial and is in a better position to weigh the effect upon the jury and to judge whether or not substantial justice had been done." On the question of the evidence, the trial judge must be accorded considerable discretion, and his judgment is accorded greater latitude than on questions of law. Loucks v. Pierce, 341 Ill. App. 253. The presiding judge in passing upon the motion for new trial has the benefit of his previous observation of the appearance of the witnesses, their manner in testifying, and of the circumstances aiding in the determination of credibility. The trial judge is in a better position than a court of review to weigh the evidence. The allowance or refusal of the motion is largely within the discretion of the trial court. His decision is subject to review, but it is

363

commonly said that it will not be reversed except for a clear abuse of discretion. Gavin v. Keter, 278 Ill. App. 308; In re Estate of Velie, 318 Ill. App. 550; Chapman v. Baltimore & O. R. Co., supra; Matkins v. Fenorsky, supra. We are of the opinion that the trial court properly allowed the motion for new trial filed by the defendant, Central Illinois Electric & Gas Co., and said order is affirmed.

It is urged by plaintiffs that the trial court erred in directing a verdict in favor of Frank Wojcik and A. F. Wojcik, partners, d/b/a Wojcik Construction Co. and in favor of A. Reyner Eastman, the architect, at the close of plaintiffs' case. Plaintiffs in their brief argue that it was alleged and proven that the defendants, Wojciks, were the general contractor; that they knew of the topographical map; that they knew of the future grading plans; that they were present and warned the Central Illinois Electric & Gas Co. to put the gas service line deep enough because of future grading. Under these circumstances, they submit that the contractors had a duty to inspect the installation of the gas pipe to see that it was installed at a safe depth below the final grading, and their failure to do so was negligence proximately contributing to the explosion. They further argue that the defendant, Frank Wojcik, instructed the grading machine operator in the reading of the topographical map without checking on the gas pipe or warning the tractor operator. From this, plaintiffs conclude that the contractor-defendants violated a duty to the plaintiffs.

It is admitted that the Wojcik Construction Co. was the general contractor. As the general contractor, these defendants had the duty of constructing the building in a workmanlike manner. This they did as shown by the testimony of the architect who examined the work done by these defendants and found everything in order.

364

■■ It is further admitted that the Wojcik Construction Co. knew of the topographical map and of the future grading, but the testimony further clearly shows that Frank Wojcik did not instruct the grading machine operator in the reading of the topographical map, but on the contrary, informed him that he could not explain the grading required and that Mr. Eastman, the architect, would do so. The record shows that Mr. Eastman did direct the operator on the grading. This conduct on the part of the defendant, Frank Wojcik, in referring the machine operator to Mr. Eastman for details of grading, does not constitute negligence, as these parties each had their separate jobs to do in a manner which each one had a right to choose. Furthermore, the evidence was that these defendants did no excavating or grading and were not equipped to do so; that they employed an independent contractor, an expert in the field, to do the grading, and Zelmer Ware, the grading machine operator, who had considerable experience, was employed by said independent contractor. It is undisputed that Gregory Excavating Company had been in this type of work for many years before it was employed as an independent contractor to do the work of grading. We cannot say, as a matter of law, that the contractors were guilty of negligence in contracting with said Gregory Excavating Company to do this part of the work.

As previously stated, the defendant, Central Illinois Electric & Gas Co., was employed by the plaintiffs to install the gas service. It cannot successfully be contended that it was under the control of the Wojciks, or that the Wojciks could instruct the gas company in the manner of installing the gas service. The Wojcik Construction Company had absolutely nothing to do with the gas service. A comprehensive review of all the evidence shows that said defendants did not exercise control, in any real sense, of the operations of the

gas company. Plaintiffs are not justified in charging the defendant, Frank Wojcik, with negligence for suggesting and reminding the foreman of the crew of the Central Illinois Electric & Gas Co. of future grading on the premises.

Where there is no evidence of negligence contributing proximately to the injury complained of, the trial court should direct a verdict in favor of the defendants. Dregne v. Five Cent Cab Co., 381 Ill. 594, 313 Ill. App. 539. The trial court properly directed a verdict for the defendants, Frank Wojcik and A. F. Wojcik, partners, d/b/a Wojcik Construction Co. The judgment of the trial court in denying the motion for new trial as to said defendants is affirmed.

It is urged by plaintiffs that in view of the fact that the defendant, A. Reyner Eastman, drew the topographical map and knew that there was to be a gas installation that he was negligent in not checking to see that the gas line was safely below the final grade and out of the way of the grading, and that he was negligent in failing to warn the grader to watch out for pipes, and that for his failure to observe said alleged duty to plaintiffs under his contract to supervise construction for plaintiffs, defendant should be held liable for the damages occasioned by the explosion.

In order to properly pass upon this question, it is necessary that we review certain other facts in this case. The Contract Documents consisted of: 1. The original contract between plaintiffs and Wojciks for construction of the house; 2. The general conditions of the contract; and 3. The specifications and drawings. By the express terms of the contract they were all as fully a part of the contract as if attached thereto and repeated therein. Article 35 (of General Conditions)—Separate Contracts—stated as follows: "The owner reserves the right to let other contracts in connection with this work." Article 38 (of General Conditions)—Architect's Status—reads as follows: "The architect

366

shall have general supervision and direction of the work. He is the agent of the owner only to the extent provided in the Contract Documents." The agreement between the defendant, Eastman, and the plaintiffs was that "Superintendence shall be sufficient to insure the erection of the building substantially in accordance with the drawings and specifications." The architect's duties did not consist of drawing the topographical map to show the original grade of the lot and the final grade to be obtained, but the architect testified he did that for the help of everybody. A licensed land surveyor, Arnold Lundgren, was hired by the owner to make a topographical survey and to prepare and furnish a topographical plat.

Masters, the owner, conducted the negotiations for the installation of the gas pipe. The gas pipe did not appear on any of the plans or maps which the architect, Eastman, drew. There is nothing in plaintiffs' Exhibit 20—the Specifications—in regard to the gas line. No bid was taken by the architect on the item of gas service from the street to the house. Eastman, as the architect, testified, "I get bids on nothing other than in the specifications and plans and get no commission on other work." He had no part in ordering the gas company to put the gas main in. He did not see the gas pipe being laid and did not know when it was put in. All counsel in the case stipulated that the original plans for the house did not include any designation of gas lines, or location of gas lines from the house to the street. Eastman further testified that the contract for the construction of the house between plaintiffs and the Wojcik Construction Co. was prepared under his direction; that all business between the client and the contractor should be transacted through him; that his compensation was to be 7% of the cost of the house and that his duties consisted of supervising the construction, but not 8 hours a day, and it consisted of approving the payments the owner would make to the con-

tractor. Eastman was called to a conference at the lot about 3:00 o'clock Saturday afternoon, May 22, to look at what had been done by the surveyor. At that time, all the grading was practically finished. Zelmer Ware, the excavator, was there. Ware said, "What do you think about this?" and Eastman said, "As far as I can see, it looks all right, but I cannot accept it until Monday when I use my instruments on this property."

 Where there is any evidence fairly tending to show that the negligence charged was the proximate cause of the injury the question is one of fact for the jury, but whether there is any such evidence is a question of law, which is raised by a motion for a directed verdict. Jenkins v. LaSalle County Carbon Coal Co., 264 Ill. 238; Seymour v. Union Stock Yards & Transit Co., 224 Ill. 579; McLaughlin v. Alton Railroad, 278 Ill. App. 551, 556.

 Where the law raises a duty, the question whether it was properly performed or not is one of fact, but whether, under the facts, the law raises a duty is a question of law. Joy v. Chicago, B. & Q. R. Co., 263 Ill. 465, 470. On a motion to direct a verdict, the court will merely inquire whether there is any evidence in the case tending to support the verdict. Walsh v. Chicago Rys. Co., 303 Ill. 339, 344. The motion to direct a verdict raises only a question of law respecting the legal sufficiency of the evidence to sustain a verdict against the party making the motion. Adamsen v. Magnelia, 280 Ill. App. 418, 422; Paulsen v. Cochfield, 278 Ill. App. 596, 599–600. The trial court's action in directing a verdict at the close of plaintiffs' proof is presumptively correct, and the burden is on the plaintiff to overcome that presumption, and it is for the plaintiff to point out evidence from which the jury could reasonably have found in his favor. Krueger v. Richardson, 326 Ill. App. 205, 211.

 The relationship between the plaintiffs and the defendant Eastman was contractual. It has been

held in Rogers v. Enzinger, 339 Ill. App. 376, 89 N.E.2d 853, that where the only relation between the parties is contractual, liability of one to the other, in an action of tort for negligence, must arise out of some positive duty which the law imposes because of the relationship or because of the negligent manner in which some act which the contract provides for is done and the mere breach of an executory contract where there is no general duty is not the basis of such action. One's duty extends no further than his right, power, and authority to carry out such duty. Allegretti v. Murphy-Miles Oil Co., 363 Ill. 137, 142. Applying the above rules of law to the facts in this case, we are unable to find wherein defendant Eastman violated any duty which he owed to plaintiffs. The trial court properly directed a verdict at the close of plaintiffs' case. Accordingly, the action of the trial court in denying the motion for new trial as to said defendant is affirmed.

For the error of the trial court in granting the motion for judgment notwithstanding the verdict filed by defendant, Central Illinois Electric & Gas Co., said judgment is reversed, and the cause remanded for a new trial.

Affirmed in part, reversed in part, and remanded.

CROW and DOVE, JJ., concur.