JOSEPH BROOKS *vs.* KINSLEY IRON AND MACHINE COMPANY.

Norfolk. March 22, 1909. — May 21, 1909.

Present: KNOWLTON, C. J., HAMMOND, LORING, BRALEY, & SHELDON, JJ.

*Negligence,* Employer's liability, In a foundry. *Evidence,* Presumptions and burden of proof. *Notice,* Under employers' liability act.

In an action against the proprietor of a foundry by one employed therein as a moulder, to recover for personal injuries caused by an explosion of molten metal which the plaintiff was pouring into a "pig bed" so called, which the defendant had furnished for the purpose, the declaration contained counts both at common law and under R. L. c. 106, § 71, cl. 1, 2. At the trial there was evidence tending to show that rust or dampness in the pig bed would have caused such an explosion as occurred, that it was not the duty of the plaintiff to inspect the pig

beds for the purpose of ascertaining whether rust or dampness was present, but that he was expected to use the pig beds as he found them, that, while the presence of rust or moisture sufficient to cause such an explosion as that by which the plaintiff was injured would not be obvious to a moulder, it could readily be discovered by proper inspection, that for many years it had been the defendant's practice to keep the pig beds free from rust and moisture by precautions that had been abandoned during the few weeks or months before the accident, during which time the care of them had been intrusted to a new and inexperienced employee to whom no instructions were given and who took no precautions, and that during that time an unusual number of small but harmless explosions had occurred. It did not appear decisively that the plaintiff knew of this change in the practice of his employer. There was no direct evidence of the presence of rust or moisture in the pig bed at or before the time of the explosion. The plaintiff, an experienced moulder, testified that, if it struck a hard substance, molten metal would fly into small particles, although that would do no more than burn the clothing, and that an explosion was liable.to occur at any time if a pig bed was not properly kept. There was no evidence that such an explosion as the one in question could have been produced from any other cause than an accumulation of rust or moisture. *Held,* that the questions, whether the explosion by which the plaintiff was injured was caused by the presence of rust or moisture in the pig bed due to negligence of the defendant or of his superintendent, whether the plaintiff was in the exercise of due care and whether he had assumed the risk of the injury, were for the jury.

Where, at the trial of an action for personal injuries alleged to have been caused by negligence of the defendant, there is evidence from which the jury would be warranted in finding actual negligence of the defendant in a certain particular, followed by the existence of the very danger which might have been expected to arise therefrom, it cannot be said as matter of law that the plaintiff is bound to go further and to exclude the operation of other possible causes to which conceivably the danger might have been due instead of having been due to the actual negligence which has been shown.

Where, intending to give a notice under R. L. c. 106, § 75, an employee of a corporation named the K. Company delivers to one who is the corporation's treasurer a letter addressed " To the Treasurer of the K. Company " at the company's place of business, which says " You are hereby notified that, while working for you in your foundry . . . I was seriously injured because of an explosion of hot metal . . . ," such notice is not insufficient by reason of not having been addressed specifically to the corporation.

TORT, with counts at common law and under R. L. c. 106, § 71, cl. 1, 2, for personal injuries received by the plaintiff while in the defendant's employ and alleged to have been caused by an explosion of molten metal which he was pouring from a ladle into a "pig bed," so called, furnished by the defendant for the purpose. Writ in the Superior Court for the county of Norfolk dated December 2, 1905.

The case was tried before *King,* J. The notice under R. L. c. 106, § 75, referred to in the opinion, was as follows :

"Boston, Mass., November 7, 1905.
" To the Treasurer of the
    Kinsley Iron and Machine Company,
        Canton, Mass.

"Sir: — You are hereby notified that, while working for you, in your Foundry, at Canton, Mass., on or about the twelfth day of September, A. D. 1905, and while in the exercise of due care, I was seriously injured, because of an explosion of hot metal, while I was placing said hot metal in a cast iron 'pig' or 'ingot,' which 'pig' or 'ingot' was provided by you as a receptacle for surplus metal after 'pouring off,' so called.

"The cause of said injury was: — . . . [Here followed a detailed statement substantially in the language of R. L. c. 106, § 71, cl. 1, 2.]

"(Signed)     Joseph Brooks,
                    By his attorney,
                        Gerald A. Healy."

Other facts are stated in the opinion.

At the close of the evidence, the presiding judge ordered a verdict for the defendant; and the plaintiff alleged exceptions.

*W. R. Bigelow,* (*G. A. Healy* with him,) for the plaintiff.

*J. E. Cotter & C. Reno,* for the defendant.

SHELDON, J.  The fundamental question is whether there was evidence which would have warranted the jury in finding that the explosion by which the plaintiff was injured was due to an accumulation of rust or moisture in the pig bed into which the plaintiff was pouring molten iron, and that such accumulation was due to the negligence of the defendant or of some one for whose negligence the defendant was responsible.  There was ample evidence that such an accumulation in the pig bed might cause an explosion like what did occur.  There was also evidence that for many years, up to a short time before the happening of this explosion, care had been taken to keep the beds free from rust or moisture by taking out the iron each morning, placing them upside down upon two iron rails until they were needed for use, and rubbing any spot of rust with a black oil which was provided for that purpose; but that for a few weeks or months before the explosion this practice had been abandoned; that the care of these beds had been intrusted to a new and in-

experienced employee, to whom no instructions were given, and who formed the habit of taking out the iron each morning and putting the beds upon the bare ground without any other attention. He was never, in any way, according to the evidence put in by the plaintiff, instructed to look for rust or moisture in them, or to take any precautions against its gathering. This change of practice was followed by an increased number of small but harmless explosions. And there was evidence that such an accumulation of rust or moisture as would create danger of a violent explosion, while it was not obvious to the moulder, whose duty it would be to pour molten iron into the bed, could readily be discovered by proper inspection made beforehand. It also could be found that the plaintiff and the other moulders were not charged with the duty of making such inspection, but were expected to use the beds as they found them, and that they had a right to rely upon proper care having been taken to keep them free from rust or moisture.

On the other hand there was no direct evidence of the presence of rust or moisture in the bed, at or before the time of the explosion. The plaintiff testified that moulten iron would fly in small particles, if it struck any hard substance like the ground, or still worse, upon a board, although this would not do more than burn the clothing; that an explosion was liable to occur at any time if a vat or pig bed was not properly kept. Other witnesses testified to the same effect. But there was no evidence that such an explosion as was testified to could have been produced from any other cause than an accumulation of rust or moisture. Accordingly, we are of opinion that the jury might have found that the explosion was due to such an accumulation. Indeed there was direct evidence that such an explosion could not have been due to any other cause.

But it is objected that this is not enough. If the existing state of affairs, however dangerous, might, according to the ordinary experience of mankind, have been due to other causes than negligence for which the defendant was responsible, then it was for the plaintiff to exclude the operation of those causes by the greater weight of evidence. *Ryan* v. *Fall River Iron Works Co.* 200 Mass. 188, 192. *Childs* v. *American Express Co.* 197 Mass. 337, 339. *Saxe* v. *Walworth Manuf. Co.* 191 Mass.

338, 341. *Hofnauer* v. *R. H. White Co.* 186 Mass. 47, 49. But these beds might be found to be a part of the defendant's ways, works and machinery. *Prendible* v. *Connecticut River Manuf. Co.* 160 Mass. 131. *Donahue* v. *Buck,* 197 Mass. 550. And the case at bar differs from those above referred to and similar cases, in that here there was positive evidence of negligence on the part of the defendant or its superintendent in discontinuing the precautions which had been taken to guard against this very danger, and of negligence which naturally would result in just such a dangerous condition of the beds as was claimed to exist. Where the jury have a right to find such actual negligence, followed by the existence of the very danger which might have been expected to arise therefrom, it cannot be said as matter of law that the plaintiff is bound to go further and to exclude the operation of other possible causes to which conceivably the danger might have been due, instead of having been due to the actual negligence which has been shown. We are not aware of any decision which has gone to that length. There was here more than a mere transitory risk arising from a temporary dampness, to be dried or wiped out by the man who was in charge of them, as in *Whittaker* v. *Bent,* 167 Mass. 588. These were permanent appliances; and the jury might find that the defendant had assumed the duty of inspecting them and keeping them dry and free from rust, and then, without notice or warning to the plaintiff, had abandoned the practice upon which he had become accustomed and had the right to rely. *Donahue* v. *Buck,* 197 Mass. 550, 552. *McCabe* v. *Shields,* 175 Mass. 438. There was evidence of a latent defect which the defendant ought to have discovered and guarded against. *Smith* v. *Thomson-Houston Electric Co.* 188 Mass. 371, 375. *Murphy* v. *Marston Coal Co.* 183 Mass. 385, 388. It was the duty of the defendant to provide reasonably safe and suitable appliances which, when used in the ordinary manner, would not involve unusual risks to its servants. *Morena* v. *Winston,* 194 Mass. 378, 384. *Erickson* v. *American Steel & Wire Co.* 193 Mass. 119, 126. *Littlefield* v. *Edward P. Allis Co.* 177 Mass. 151.

The plaintiff might have been found to have been himself in the exercise of due care. Although an expert moulder of very

long experience and thoroughly familiar with the dangers of his employment, yet he did not assume the risk of negligence on the part of the defendant or of those fellow servants for whose negligence, under R. L. c. 106, § 71, the defendant was responsible. *Meagher* v. *Crawford Laundry & Machinery Co.* 187 Mass. 586, 589, and cases cited.  He was not bound to guard against the existence of any hidden danger in the beds which would not have existed if proper care had been taken of them.  *Myers* v. *Hudson Iron Co.* 150 Mass. 125, 134.  As already has been said, he was not himself charged with any care over them, or any duty to inspect them.  And such examination as he was able to make at the time of pouring, it could have been found, would not have disclosed to him the existence of any danger.  *Donahue* v. *Buck,* 197 Mass. 550, 553.  *Redmund* v. *Butler,* 168 Mass. 367.

For the same reasons, he did not assume the risk of an accident like this.  *Wagner* v. *Boston Elevated Railway,* 188 Mass. 437, 441.  He cannot be prevented from recovering on the ground that, by continuing to work after he knew that the precautions formerly taken had been abandoned, he assumed the risks arising from such employment, as in *McTiernan* v. *American Woolen Co.* 197 Mass. 238.  It does not decisively appear that he had such knowledge.  It is the fact, as the defendant's counsel say in their brief, that it did not appear conclusively " when first, or for how long a time, the pig beds had been kept on iron rails, nor why [or when] the iron rails were done away with and the pig beds kept on the ground."  These questions were for the jury.

The notice given under the provisions of R. L. c. 106, § 75, was addressed " to the treasurer " of the defendant, and was delivered in hand to the person who was then its treasurer.  Even taking into account the contents of the notice, the jury would have had a right to find that this notice was addressed to and served upon the defendant through its treasurer.  *Shea* v. *New York, New Haven, & Hartford Railroad,* 173 Mass. 177. *De Forge* v. *New York, New Haven, & Hartford Railroad,* 178 Mass. 59.  *McCabe* v. *Cambridge,* 134 Mass. 484.  And see *Produce Exchange Trust Co.* v. *Bieberbach,* 176 Mass. 577, 589, 590.

The case is close ; but in our opinion it should have been submitted to the jury.

*Exceptions sustained.*