CHARLES KULAS, *ET AL.*, PLAINTIFFS-RESPONDENTS, v.
PUBLIC SERVICE ELECTRIC AND GAS COMPANY, DE-
FENDANT-APPELLANT, AND JACOB JACOBS, *ET AL.*,
DEFENDANT AND THIRD-PARTY PLAINTIFF, v. VIN-
CENT WHITE, THIRD-PARTY DEFENDANT.

Argued November 18, 1963—Decided January 20, 1964.

*Mr. Herman H. Wille, Jr.* argued the cause for the defendant-appellant, Public Service Electric and Gas Company (*Mr. Luke A. Kiernan, Jr.,* attorney).

*Mr. Donald R. Conway* argued the cause for the plaintiffs-respondents (*Mr. Benedict E. Lucchi,* attorney).

The opinion of the court was delivered by

PROCTOR, J. This action in negligence arises out of an accident which occurred on April 9, 1960, when the plaintiffs' house was destroyed as a result of an explosion. The jury returned a verdict of $18,000 against the defendants Public Service Electric and Gas Company and Jacob Jacobs & Sons (Jacobs). A verdict of no cause for action was returned in favor of the third-party defendant Vincent White against the third-party plaintiff Jacobs. Jacobs did not appeal from either judgment. The defendant Public Service moved for judgment notwithstanding the verdict or in the alternative for a new trial. The motion was denied and the defendant appealed. The Appellate Division affirmed the judgment of the trial court. We granted defendant's petition for certification. 40 *N. J.* 223 (1963).

In November 1959 the plaintiffs, Mr. and Mrs. Charles Kulas, who were constructing a house at 1435 Lincoln Avenue, Pompton Lakes, New Jersey, requested the defendant Public Service to install gas service so that heat would be available during the final stages of construction. Public Service ran a service pipe underground from its gas main in the street to the cellar of plaintiffs' house and subsequently in January 1960 turned on the service.

Vincent White, a brother of Mrs. Kulas, was assisting Mr. Kulas in the construction of the house. In April 1960 when the house was substantially completed, White, in Kulas' presence, designated an area in the front yard for the installation of a septic tank. Kulas testified that the area was located so as not to interfere with the gas service pipe leading from the street to the house. He said that the area for the tank installation had been marked with lime by White. The excavation was to be approximately 16 feet long, 10 feet wide, and 5 feet deep. White, with Kulas' approval, hired the defendant Jacobs to excavate the area. Pursuant to their agreement, Keimpe Jacobs, son of Jacob Jacobs, arrived at about 11:30 A. M. on April 9, 1960, with a bucket loading machine to do the excavating. White testified that he indicated to him the

area to be bulldozed which was several feet from the gas service line. However, he did not tell either Jacob Jacobs or Keimpe Jacobs the location of the gas service pipe, nor did either of them inquire where the utilities were located.

According to White, he left Keimpe to his bulldozing, entered the house, ate his lunch, and proceeded with his own work when he heard a blast. He ran outside and learned from Keimpe, who had then reached a depth of approximately three feet, that the bulldozer had hit the service gas pipe. White proceeded to the cellar and saw that the pipe was pulled away from the house connection and that gas was gushing into the cellar. After opening all the windows, White ran next door, telephoned the Public Service, told its dispatcher what had happened, and requested immediate assistance. Sometime within the ensuing 20 minutes, an explosion occurred resulting in the complete destruction of the house.

The plaintiffs charged Public Service with liability on two separate grounds. First, they contended that it was negligent in failing to install properly the gas pipe which was hit by Keimpe Jacobs, i. e., that the pipe was installed too close to the surface of the ground. Secondly, they contended that Public Service was negligent in failing to respond within a reasonable time to an emergency call about the broken service line.

Public Service initially contends on this appeal that there is no proof in the record showing that the installation of the gas service pipe, if improper, was a substantial factor in causing the explosion, and that therefore the trial court erred in denying its motion for a directed verdict and submitting this issue to the jury.

The evidence regarding both the actual depth of the pipe and the minimum-depth standard was conflicting. · Lawrence Feldman, a plumbing and heating contractor, who had installed the heating apparatus inside the house, testified for the plaintiffs. He admitted that he had never installed gas service lines, since this was the responsibility of the utility company, but he said that he had observed gas service line

installations in approximately 1,000 houses on which he had worked. Over the defendant's objection as to his qualifications, he was permitted to testify that as a standard rule gas service lines have been installed "anywhere from 30 to 36 inches below the ground." However, on cross-examination Feldman qualified his "standard" by saying that the depth depends upon the location of the main in the street and also upon the nature of the construction of the house. He testified:

"Q. Well, if the excavation for a cellar is eight foot deep and the house would go close to the ground, the entire cellar is below the ground, it would involve a different entrance into the cellar for your gas service pipe than this house that was considerably above the ground and the excavation of the cellar was quite shallow, isn't that so?

A. I would say yes.

Q. So instead of there being a general rule and regulation as to this thing, it depends upon certain characteristics of the house and the location of the main in the street, isn't that so?

A. Yes."

James Cochrane, a mechanical engineer employed by the defendant, testified that the Code published by the American Society of Mechanical Engineers and the American Gas Association prescribes:

"Services shall be installed at a depth which will protect them from excessive external loadings, and local activities, such as gardening. It is recommended that a minimum depth of 12 inches in private property and a minimum depth of 18 inches in streets and roads be maintained."

The Code, as read into evidence, continues:

"Where this cannot be done due to existing substructures, et cetera, less cover is permitted provided, however, that where such services are subject to excessive superimposed loads, those portions of the service shall be cased or bridged to avoid harmful additional loads on the pipe, or strengthened to resist them."

Feldman testified that he measured the depth of the pipe with a ruler two days after the explosion and found it to be

13 inches below the surface. Keimpe Jacobs, the excavator, said the pipe was approximately 18 inches deep after the explosion. White testified that he observed the pipe 11 to 12 inches from the surface; however, his observation was in the area where the pipe had been pulled up from its original depth by the bulldozer. Public Service employees testified that the depth of the service pipe at the curb where the cutoff was located was three feet. In addition, there was testimony by White that 14 inches of topsoil had been removed from the yard and presumably would be replaced after the excavation.

If the jury accepted the testimony of Feldman that the pipe was 13 inches below the ground, and assuming the 14 inches of topsoil were thereafter added, the "standard" of 30 to 36 inches he recommended was not complied with.

■ The initial inquiry in any negligence action must be whether the defendant has breached a duty owed to the plaintiff. Assuming that Public Service owed the plaintiffs a duty not to create an unreasonable risk of explosion from the foreseeable hazard of excavating, we find nothing in the record which suggests the standard of conduct required of the defendant to fulfill this duty. The minimum-depth standard recommended by the plaintiffs' expert was not, by the testimony, shown to be related to the risk of injury from bulldozing. The only evidence connecting a minimum-depth standard to any risk of harm (and therefore to a concomitant duty to the plaintiffs) was given by the defendant's expert Cochrane, who testified that the standard was intended to protect against the risk of injury from external loading and local activity such as gardening. Plaintiffs offered no explanation for the desirability or necessity of their 30 to 36-inch standard. *Cf. Masters v. Central Illinois Electric & Gas Co.,* 7 *Ill. App. 2d* 348, 129 *N. E. 2d* 586 (*App. Ct.* 1955). See *Harper & James, The Law of Torts* § 20.5, at *p.* 1138. However, we need not pursue the question of whether the defendant breached a duty relating to the risk of bulldozing under the facts of this case, since we are convinced that as a matter of law there was no causal relation between defendant's con-

duct in installing the pipe, assuming it was negligent, and the loss to the plaintiffs.

 In order for a plaintiff to prevail, in addition to showing that the defendant was negligent, he must prove that the defendant's negligence was a proximate cause of his loss. In determining the existence of proximate cause, we must first inquire whether defendant's conduct constituted a cause in fact of plaintiffs' loss. *Harper & James, op. cit. supra,* § 20.2, at *p.* 1110. "[A]n act or an omission is not regarded as a cause of an event if the particular event would have occurred without it." *Prosser, Torts,* § 44, *p.* 219, 220 (1955). And as stated by Professor Beale:

> "[I]f the result would have happened just as it did whether the alleged actor had done his duty or not the failure to perform the duty was not a factor in the result, or, in other words, did not cause it." Citing *Sowles v. Moore,* 65 *Vt.* 322, 26 *A.* 629, 21 *L. R. A.* 723 (*Sup. Ct.* 1893) ; *Ford v. Trident Fisheries,* 232 *Mass.* 400, 122 *N. E.* 389 (1919) ; *Piqua v. Morris,* 98 *Ohio St.* 42, 120 *N. E.* 300, 7 *A. L. R.* 129 (*Sup. Jud. Ct.* 1918) ; *Montgomery Light & Water Power Co. v. Charles, D. C.,* 258 *F.* 723 (*D. Ala.* 1919). "The Proximate Consequences of an Act," 33 *Harv. L. Rev.* 632, 637, 638 (1920).

A similar test for causation in fact is set forth in § 432(1) of the *Restatement, Torts* (1934) as follows: "* * * [T]he actor's negligent conduct is not a substantial factor in bringing about harm to another if it would have been sustained even if the actor had not been negligent." See also the illustrations following the section. Our courts have recognized the above principles. *Monaco v. Comfort Bus Line, Inc.,* 134 *N. J. L.* 553 (*E. & A.* 1946) ; *Beyer v. White,* 22 *N. J. Super.* 137 (*App. Div.* 1952) ; *Lutz v. Westwood Transportation Co.,* 31 *N. J. Super.* 285 (*App. Div.* 1954).

In the present case White testified that approximately ten minutes prior to the blast he observed that the excavation had reached a depth of three feet. The excavator, Keimpe Jacobs, testified that at the time he hit the pipe he had dug in the area where the pipe lay "about two and a half, possibly three feet." Moreover, both witnesses testified that the excavation was intended to be five feet deep.

Defendant's position that its negligence, if any, did not cause the explosion can be sustained only if the following question must as a matter of law be answered in the affirmative: If the service pipe had been installed at a depth of 30 to 36 inches, would the accident nevertheless have occurred? Since the uncontradicted evidence shows that the excavation had reached that depth at the time the pipe was struck, the accident would have happened, just as it did, had the defend-· ant installed the pipe at a depth of 30 inches in accordance with the standard alleged by plaintiffs' expert. Accordingly, defendant's conduct in failing to meet that standard was not a perceptible factor in causing plaintiffs' injury. Since there was no evidence which would support a reasonable inference, as distinguished from mere speculation, that defendant's negligence in any way contributed to the cause of the explosion, the court erred in permitting the jury to consider this phase of the case.

*Andreoli v. Natural Gas Co.,* 57 *N. J. Super.* 356 (*App. Div.* 1959), relied upon by the plaintiffs, is clearly distinguishable. In that case there was evidence that proper installation of the gas appliance in the plaintiff's cellar would have prevented the explosion which resulted in plaintiff's loss. *Id.,* 57 *N. J. Super.,* at *p.* 362.

Plaintiffs contend that the defendant did not raise the issue of "its negligence being a 'substantial factor' " in the cause of the accident either at the trial or in the Appellate Division and should therefore not be permitted to raise it here. This contention is wholly without merit since the record shows otherwise.

The Appellate Division affirmed the trial court's ruling that there was sufficient evidence of negligence in responding to the emergency call to raise a jury question. On this appeal defendant does not complain of that determination; rather, it contends that assuming it was negligent in responding to the emergency call, there was no evidence from which the jury could find that the delay in any way contributed to the cause of the explosion. The evidence relating to the time which

elapsed between the dislodgment of the pipe, the telephone call made by White to Public Service notifying it of the emergency, and the explosion was in sharp conflict. The jury, if it believed the plaintiffs' witnesses, could have found that as much as 20 minutes elapsed from the time of the telephone call until the explosion occurred. On the other hand, defendant's evidence indicated a period of approximately five minutes from the time it was notified until the explosion. The defendant's emergency man arrived shortly after the explosion and turned off the gas at the curb.

■■ Defendant contends that there was no proof upon which an inference could be based that had the gas been turned off at the curb at an earlier time, the accumulation of gas would not have exploded. We disagree. Of course, the plaintiffs have the burden of proving causation but they are not obliged to establish it by direct, indisputable evidence. "The matter may rest upon legitimate inference, so long as the proof will justify a reasonable and logical inference as distinguished from mere speculation." *Beyer v. White, supra,* 22 *N. J. Super.,* at *p.* 144. The utility is under a duty to respond within a reasonable time upon notification of an emergency break in service. *Cf. Guzzi v. Jersey Central Power & Light Co.,* 12 *N. J.* 251 (1953). This duty is created in law because of the belief that measures it could take, such as turning off the gas at the curb, would prevent or diminish the risk of loss from an explosion. Conversely, if this duty is breached, it can be inferred that the failure to respond in a reasonable time would probably increase the risk of explosion which otherwise would exist.

■ In the present case the proofs show that all of the windows in the house were opened immediately after the pipe was dislodged. The jury from common knowledge could find that the gas would dissipate if it were turned off, and that in the normal course of events, the risk of explosion would diminish and eventually disappear. The jury could also find that the flow of gas which continued after it should have been turned off increased the concentration of the gas and accordingly the

risk of explosion. Since, in fact, the explosion did not occur for 20 minutes, the jury could find that had the gas been turned off sooner, the explosive concentration would not have been reached or would have been dissipated before the detonating spark occurred, and hence the explosion more probably than not would have been prevented. Therefore, we cannot say as a matter of law that the defendant's delay was not a substantial factor contributing to the cause of the explosion. See *Restatement, Torts*, § 4.32(1) comment c, *p.* 1163 (1934); *Brooks v. Kinsley Iron and Mach. Co.,* 202 *Mass.* 228, 88 *N. E.* 771 (*Sup. Jud. Ct.* 1909); Malone, "Ruminations on Cause-In-Fact," 9 *Stan. L. Rev.* 60 (1956). Accordingly, the trial court did not err in submitting this issue to the jury.

Since the question of defendant's liability for negligent installation of the service pipe was erroneously submitted to the jury and since we are unable to determine whether the jury predicated defendant's liability on this issue or on the issue regarding delay, which was properly submitted to the jury, there must be a new trial. *Cf. Guzzi v. Jersey Central Power & Light Co., supra; Maccia v. Tynes,* 39 *N. J. Super.* 1 (*App. Div.* 1956). The judgment of the Appellate Division is reversed and the matter is remanded to the Law Division for a new trial. Costs to abide the event.

*For reversal and remandment*—Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.

*For affirmance*—None.