686 A.2d 1234

MARTINA THORN AND JAMES THORN, PLAINTIFFS–RESPON-
DENTS, v. TRAVEL CARE, INC. AND/OR TRAVEL CARE PA-
TIENT TRANSPORTATION SERVICE, LEONARD H. ADOFF,
T/A TRAVEL CARE PATIENT TRANSPORTATION SERVICE,
AND THERESA M. WEGRZYN, DEFENDANTS–APPELLANTS.

Superior Court of New Jersey
Appellate Division

Argued November 18, 1996—Decided January 14, 1997.

Before Judges HAVEY, KESTIN and EICHEN.

*Thomas D. Monte, Jr.*, argued the cause for appellants (*Monte & Marriott*, attorneys; *Mr. Frank E. Borowsky, Jr.* on the brief).

*Mark Rothman* argued the cause for respondent Martina Thorn (*Raymond A. Gill, Jr.*, attorney; *Francis E. Wilton* on the joint brief).

*Spencer B. Robbins* argued the cause for respondent James Thorn (*Robbins & Robbins*, attorneys; *Mark S. Rothman*, of counsel; *Mr. Robbins* on the joint brief).

The opinion of the court was delivered by

EICHEN, J.A.D.

In this personal injury action, defendants appeal from the trial court's denial of their motions for a directed verdict at the close of plaintiffs' case and judgment notwithstanding a jury verdict awarding aggregate damages in the amount of $472,875 to plaintiffs. Defendants contend that the testimony of plaintiffs' experts was insufficient to establish that defendants' negligent maintenance of a seat belt proximately caused plaintiff Martina Thorn's injuries.[1] Defendants argue that plaintiff's injuries would have been the same or worse even if she had been wearing a seat belt, and therefore she had the burden to demonstrate by expert testimony that an operable seat belt would have prevented those injuries. We disagree and affirm.

Plaintiff was injured while riding in defendants' invalid motor coach. She had hired the coach to transport her daughter, who is wheelchair-bound, to the dentist. While in transit, the coach stopped abruptly and caused plaintiff to be forcibly thrown from her bench-type seat across the aisle into her daughter's wheelchair. Although the coach was equipped with a seat belt, it was inoperable due to a missing buckle. When the coach stopped abruptly to avoid being "cut-off" by another vehicle, plaintiff

---

[1] Plaintiff James Thorn sued *per quod*. The term "plaintiff" refers to Martina Thorn.

experienced a rapid "acceleration and deceleration" movement of her body as she was thrown across the coach. As a result, plaintiff sustained a "traumatic brain injury," permanent in nature, as well as damage to her cervical and lumbar spine.

Plaintiffs instituted a personal injury action against defendants alleging negligent operation of the motor coach and negligent failure to properly maintain the seat belt. At trial, plaintiffs introduced four expert witnesses, all of whom concluded, within a reasonable degree of medical certainty, that plaintiff had suffered a permanent "closed head injury," as well as cervical and lumbar injuries, and that her injuries were caused by the accident. In regard to plaintiff's head injury, the experts testified that the acceleration and forceful deceleration of plaintiff's brain caused a collision between her brain and skull, resulting in a traumatic brain injury.

Dr. William Mullally, a Harvard University trained neurologist, who is board certified in neurology and internal medicine, testified on behalf of plaintiffs. He described the field of neurology as being concerned with the forces of acceleration and deceleration as they relate to the movement of the brain within the skull. Describing these forces, he stated:

> [I]n space and time, if the body is moving, the brain is moving at the same speed. If the body is stopped at any time, the brain will continue to move just like any other object. It may bounce against the skull. It goes forward and then backwards, and it also turns, rotates.

He gave as an example, "shaken baby syndrome," where continuous shaking of a baby "bounces the brain around," causing impact with the skull, sometimes producing such significant trauma to the brain that death occurs. Dr. Mullally concluded that plaintiff's chronic head pain and cognitive deficits were the result of the "closed head injury" she sustained in the accident. Neither he nor the other experts presented by plaintiffs specifically testified concerning what, if any, injuries plaintiff would have sustained had she been wearing her seat belt. Defendants did not present any medical experts or introduce evidence that plaintiff's injuries

would have been the same or worse had a properly functioning seat belt been employed by plaintiff.

Defendants moved for a directed verdict at the close of plaintiffs' case, arguing that plaintiffs failed to sustain their burden of proof with respect to proximate cause on the negligent maintenance of the seat belt claim. The trial judge denied defendants' motion, ruling that "[t]he plaintiff is not required to prove that if [she] had used a good safety belt ... she would not have sustained ... injury."

At the conclusion of the trial, the jury absolved defendants of liability on the claim of negligent operation of the motor coach, but determined that defendants were negligent in failing to properly maintain the seat belt, which negligence proximately caused plaintiff's injuries. After judgment was entered, defendants moved for judgment notwithstanding the verdict, again arguing that plaintiffs had failed to demonstrate that plaintiff would not have been injured had she been wearing a seat belt. The trial court denied the motion, stating that the jury "could have reasonably concluded that defendants' negligence in failing to maintain the vehicle was clearly a proximate cause of the injuries sustained."

Defendants make the same argument on appeal. They maintain that the trial court erred in failing to grant their motions for judgment because plaintiffs were required to specifically prove through expert testimony that the absence of an operable seat belt proximately caused plaintiff's injuries.

Defendants maintain, as earlier noted, that had plaintiff been wearing a seat belt, the abrupt acceleration/deceleration forces experienced by her body when the motor coach stopped short would have been the same or greater and therefore would have produced the same or worse injuries than those she sustained. In other words, defendants contend that plaintiff would have experienced "the same whiplash type motion" whether or not she had been wearing a seat belt, and therefore their failure to maintain a proper safety restraint was not the cause of her injuries. Accordingly, defendants insist that it was plaintiffs' burden to demon-

strate through expert testimony that plaintiff's injuries would not have occurred had she been wearing a seat belt.

It is fundamental that in order to impose tort liability upon a defendant, a plaintiff must prove the defendant's wrongful conduct, injury and proximate cause. *See, e.g., Dawson v. Bunker Hill Plaza Associates,* 289 *N.J.Super.* 309, 322, 673 *A.*2d 847 (App.Div.), *certif. denied,* 146 *N.J.* 569, 683 *A.*2d 1164 (1996). Hence, the plaintiff has the burden of proving by a preponderance of the evidence that a defendant's negligent conduct is a cause-in-fact of the plaintiff's injury. *See Kulas v. Public Serv. Elec. & Gas Co.,* 41 *N.J.* 311, 317, 196 *A.*2d 769 (1964); *see also Battista v. Olson,* 213 *N.J.Super.* 137, 148–49, 516 *A.*2d 1117 (App.Div.1986). Moreover, an act or omission is not regarded as a cause-in-fact of an event if the event would have occurred without such act or omission. *Kulas, supra,* 41 *N.J.* at 317, 196 *A.*2d 769. Nevertheless, "[t]his rule has been tempered by cases holding that, even if damage would have occurred in the absence of a defendant's negligence, liability still may be imposed upon a showing that the negligent conduct was a *substantial factor* in causing the harm alleged." *Battista, supra,* 213 *N.J.Super.* at 149, 516 *A.*2d 1117. *See Conklin v. Hannoch Weisman,* 145 *N.J.* 395, 417, 419, 678 *A.*2d 1060 (1996) (discussing "causation in fact," and specifically noting that "our concepts of causation for failure to act are expressed in terms of whether the negligent conduct may be considered a substantial factor contributing to the loss"); *see also Grassis v. Johns–Manville Corp.,* 248 *N.J.Super.* 446, 457, 591 *A.*2d 671 (App.Div.1991) (noting that the law does not require a plaintiff to prove a single cause, only that defendant's conduct was a substantial factor in causing the injury).

In *Battista, supra,* we explained that the "substantial factor" exception to the general rule of proximate causation rests largely on our courts' acceptance of the following tort principles:

[An] actor's negligent conduct is a legal cause of harm to another if

(a) his conduct is a substantial factor in bringing about the harm.... [2 *Restatement, Torts 2d,* § 431 at 428 (1965)].

\* \* \* \* \* \* \* \*

(1) Except as stated in Subsection (2), the actor's negligent conduct is not a substantial factor in bringing about harm to another if the harm would have been sustained even if the actor had not been negligent.

(2) *If two forces are actively operating, one because of the actor's negligence, the other not because of any misconduct on his part, and each of itself is sufficient to bring about harm to another, the actor's negligence may be found to be a substantial factor in bringing about it.* [*Id.,* § 432 at 430 (Emphasis supplied)].

[213 *N.J.Super.* at 149, 516 *A.*2d 1117 (citations omitted).]

In short, although tort law recognizes that there may be multiple causes of an injury, these causes " 'need not, of themselves, be capable of producing the injury; it is enough if they are 'a substantial factor' in bringing it about.' " *Conklin, supra,* 145 *N.J.* at 419, 678 *A.*2d 1060 (quoting *Scott v. Salem County Memorial Hosp.,* 116 *N.J.Super.* 29, 34, 280 *A.*2d 843 (App.Div. 1971) (citations omitted)).

In determining whether a cause is a substantial factor "we do not tell a jury that a significant factor must be" a particular percentage to be deemed substantial, but leave that determination to the fact finder itself. *See Grassis, supra,* 248 *N.J.Super.* at 446, 457 n. 8, 591 *A.*2d 671 (noting that the jury in *Stephenson v. R.A. Jones & Co., Inc.,* 103 *N.J.* 194, 199, 510 *A.*2d 1161 (1986) had "found that a 5% causative factor on the part of a manufacturer was [sufficiently] significant" to constitute a substantial factor in causing plaintiff's harm). Further, although plaintiffs bear the burden of proving causation, "they are not obliged to establish it by direct, indisputable evidence." *Kulas, supra,* 41 *N.J.* at 319, 196 *A.*2d 769. Instead, " '[t]he matter may rest upon legitimate inference, so long as the proof will justify a reasonable and logical inference as distinguished from mere speculation.' " *Ibid.* (quoting *Beyer v. White,* 22 *N.J.Super.* 137, 144, 91 *A.*2d 606 (App.Div.1952)).

In the instant case, plaintiffs alleged that two negligent acts by defendants produced plaintiff's injuries, the negligent

operation of the coach and the negligent maintenance of the seat belt. Applying the foregoing principles, plaintiffs were not required to specifically prove which of those acts was *the* cause of plaintiff's injuries; they need only have demonstrated that either or both acts of alleged negligence were a substantial factor in producing plaintiff's injuries. *See Grassis, supra,* 248 *N.J.Super.* at 457, 591 *A.*2d 671. In other words, plaintiff need not have demonstrated that the impact resulting from being thrust from her seat was "exclusively capable of producing her injury." *Dawson, supra,* 289 *N.J.Super.* at 323, 673 *A.*2d 847 (citing *Scott, supra,* 116 *N.J.Super.* at 34, 280 *A.*2d 843).

When reviewing motions for judgment, we accord the non-moving party the benefit of all legitimate inferences, and, if reasonable minds could differ, the motion must be denied. *Dolson v. Anastasia,* 55 *N.J.* 2, 5, 258 *A.*2d 706 (1969); *see R.* 4:40–1 and –2. Plaintiffs presented expert testimony indicating that the acceleration and forceful deceleration plaintiff experienced when her body was ejected forward into the coach caused her to suffer a closed head injury to the brain as well as severe cervical and lumbar injuries. The jury heard testimony establishing that the brain has a tendency to move at the same speed the body is moving and will continue to do so until it collides with the skull. Construing all inferences in favor of plaintiffs, we conclude that a jury could draw "a reasonable and logical inference" that defendants' negligent failure to furnish an operable seat belt was a substantial factor in causing plaintiff's injuries, a conclusion clearly predicated upon more than "mere speculation." *See Kulas, supra,* 41 *N.J.* at 319, 196 *A.*2d 769. To the extent that plaintiff might have experienced a whiplash had she worn a seat belt, a reasonable jury could decide, based on the expert testimony plaintiffs presented, that the movement of the brain within the skull resulting from that type of acceleration/deceleration is substantially less than what occurred when plaintiff was thrown across the coach. Accordingly, the trial court properly denied defendants' motions for judgment. *Dolson, supra,* 55 *N.J.* at 5, 258 *A.*2d 706; *see R.* 4:40–1 and –2. In reaching this determination, we reject as without

merit defendants' arguments derived from the holding in *Waterson v. General Motors Corp.*, 111 *N.J.* 238, 544 *A.*2d 357 (1988). *R.* 2:11–3(e)(1)(E).

*Waterson* is a "seat belt" case. The case requires a defendant seeking to limit its liability to affirmatively prove through expert testimony that a plaintiff's concurrent negligence resulted in enhanced injuries so that a jury may apportion the harm between the causes associated with each party's negligent conduct. *Waterson, supra,* 111 *N.J.* at 264, 275, 544 *A.*2d 357. Relying on *Waterson,* defendants argue that the instant case "is essentially a 'reverse' seat belt case, *i.e.*, rather than the defendant asserting the plaintiff's failure to use a seat belt as a shield to limit damages, the plaintiff has used the unavailability of an operable seat belt as a sword in an effort to obtain damages." Consequently, defendants contend that plaintiffs were required to prove through expert testimony that plaintiff would not have been injured had she been wearing a seat belt.

As we discussed previously, plaintiffs were only required to prove that defendants' failure to provide an operable seat belt was a substantial factor in causing plaintiff's harm. Essentially, defendants seek to limit their liability by placing the burden upon plaintiffs to establish which portions of plaintiff's injuries are attributable to the forces resulting from her inability to wear a seat belt and which, if any, are attributable to the forces stemming from the coach's initial abrupt stop. Consistent with New Jersey decisions regarding apportionment of harm in other tort law contexts, defendants retain this burden. *See, e.g., Anderson v. Picciotti,* 144 *N.J.* 195, 212, 676 *A.*2d 127 (1996) (medical malpractice case holding that where plaintiff does not urge that defendant's negligence increased her risk of harm from a pre-existing disease, defendant has " 'burden to segregate recoverable damages from those solely incident to the preexisting disease.' ") (quoting *Fosgate v. Corona,* 66 *N.J.* 268, 273, 330 *A.*2d 355 (1974)); *Schwarze v. Mulrooney,* 291 *N.J.Super.* 530, 540–41, 677 *A.*2d 1144 (App.Div.1996) ("second collision injuries" case holding that defen-

dant had burden of demonstrating the extent to which plaintiff's negligence contributed to increasing her injuries); *Dafler v. Raymark Industries, Inc.,* 259 *N.J.Super.* 17, 28–29, 611 *A.*2d 136 (App.Div.1992), *aff'd o.b.,* 132 *N.J.* 96, 622 *A.*2d 1305 (1993) (product liability case holding that defendant has burden of proving cause of plaintiff's lung cancer is capable of apportionment between cigarette smoking and exposure to asbestos).

Affirmed.