**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0720-24

YIREIKA DE LA ROSA,

    Plaintiff-Appellant,

v.

LA GYPSY,

    Defendant-Respondent.

_____

Submitted November 19, 2025 – Decided December 5, 2025

Before Judges Currier and Smith.

On appeal from the Superior Court of New Jersey, Law Division, Passaic County, Docket No. L-1402-22.

John J. Pisano, attorney for appellant.

Bennett, Bricklin & Saltzburg, LLC, attorneys for respondent (Michael Dolich and Jason Farina, on the brief).

PER CURIAM

    Plaintiff Yireika De La Rosa appeals the trial court's order granting summary judgment for defendant. The trial court found plaintiff failed to

establish the elements of her negligence claim, specifically as to the elements of breach of duty and proximate cause. On appeal, plaintiff argues the trial court committed error because plaintiff presented material issues of fact through her deposition testimony and her expert's opinion, sufficient to defeat summary judgment.

We are unpersuaded, and we affirm for the reasons which follow.

I.

We gather the facts from the summary judgment record, viewing them in the light most favorable to plaintiff as the non-moving party. See Richter v. Oakland Bd. of Educ., 246 N.J. 507, 515 (2021).

On June 5, 2022, Yireika De La Rosa (plaintiff) went to LA Gypsy (defendant), a restaurant. Plaintiff was a first-time patron, and she attended with her friend about 3:00 p.m. that day. She drank half a beer while at the restaurant and went to use the restroom. She crossed the dining area and proceeded down a short hallway to the restroom. As plaintiff approached the restroom, she noticed maintenance staff spraying a blue liquid, which smelled like ammonia, onto the floor. To enter the restroom, plaintiff had to pass through the area where the staff person was applying the liquid. According to plaintiff, as she smelled the ammonia odor, she quickly left the restroom area. Feeling as if she

2

could not breathe, and concerned that she would pass out, she began to run towards the front of the restaurant. Plaintiff testified at her deposition that she "thought she was going to die." Plaintiff exited the restaurant, passed out and fell to the ground, sustaining injuries. When plaintiff woke up, she felt pain on the right side of her head, her left arm, her left knee, as well as her back, right arm, right wrist, and right shoulder. There were no warnings in front of the bathroom indicating the staff person was cleaning the floor. Plaintiff could not recall whether the person was wearing a mask or not. Also, plaintiff could not recall whether there was a descriptive label or other mark identifying the substance of the spray bottle which contained the blue liquid.

After the incident, plaintiff went to the emergency room, where she underwent a CT scan. She underwent further treatment with Dr. Wael Elkholy. She eventually had neck and back surgery in November 2022 and January 2023.

Plaintiff named Dr. Elkholy as an expert witness. In his report, Dr. Elkholy stated that while at the restaurant, plaintiff "suddenly became dizzy and collapsed, due to inhaling ammonia in a closed restroom that was not anticipated." Dr. Elkholy also stated in his report that:

> I have been practicing medicine for over 30 years. Attached is one of several articles/treatises from the University of Florida Health, confirming the toxic side effects of the sudden presence of ammonia, wherein

3

same is unanticipatedly inhaled. It is a foreseeable consequence that an individual will suddenly experience a medical calamity, dizziness, and collapse. The attached treatises collaborate the foreseeable medical problem that immediately follows, as was the case for [plaintiff] on 06/05/22.

Dr. Elkholy opined, to a reasonable degree of medical certainty, that plaintiff's cervical and lumbar injuries were all related to the June 5, 2022 incident at the restaurant.

On June 6, 2022, plaintiff sued defendant, asserting negligence. Defendant answered, and then moved for summary judgment after the completion of discovery. On September 19, 2024, the trial court heard argument and made findings. The court accepted as true plaintiff's testimony about what happened in the restaurant. The court then considered plaintiff's expert's opinion and whether it was probative on the question of causation. The trial court determined it was not. The court stated "there are a lot of other [hypothetical facts] that perhaps could have helped support the fact that [the blue liquid] was ammonia. But not having any [facts] and just having somebody pass out, I – I just don't think there's enough here to establish causation." The court noted that plaintiff's expert did not identify what contents were in the spray bottle or what substances were discovered in plaintiff's body afterwards which could have caused her to faint or collapse. Assuming that the substance was ammonia, the

4

court found that the presence of ammonia in the hallway leading to the bathroom and evidence of plaintiff's eventual collapse was insufficient to show that ammonia caused plaintiff's collapse. The court stated:

> But I think . . . in order to -- to get to a jury, you need more than . . . that analysis. To me, that's something for the -- if somebody were to say, well, if I -- if I had a drink of alcohol, the drink of alcohol could cause me to collapse. You still need to know what the alcohol was, what proof it was. Did you eat before you drank it? I mean, there's a lot of other factors that would go into that type of a hypothetical.
>
> And in this case, without any toxicology analysis -- and quite frankly, what we didn't talk about today was -- but I saw it explored a little bit in the deposition -- is, you know, what does this area look like? Is it a closed area? Is it a wide[-]open area? Is there a window? I -- I think at one point, [plaintiff] was asked about windows, and she had no idea. Was there an air conditioning system on? So I think there are other factors that determine . . . assuming it was ammonia . . . was the ammonia being used in a way that would cause this type of reaction?
>
> . . . .
>
> There could have been other reasons why this plaintiff felt like she was going to pass out -- I don't know. And perhaps, there was a smell of ammonia. But I think what needs to be here or presented is some element of causation to tie the ammonia that was being used that day -- if there -- if it was ammonia -- to the actual fainting [which caused] the injuries to the plaintiff. And without any breakdown of . . . what was in this spray bottle, what was in her body, in terms of

5

the toxicology report, which presumably could have done -- been done at the hospital.

. . . .

[T]here are a lot of other things that perhaps could have helped support the fact that [the blue liquid] was ammonia. But not having any of that and just having somebody pass out, I -- I just don't think there's enough here to establish causation. I don't see that there's enough, even under the Brill[1] standard -- if I take all favorable inferences -- and even if I, today, assume that there was some ammonia -- and again, I don't know that it's been proven. But if I assume that, for purposes of the argument, I don't think that carries the day. I just can't find that that would be enough to get over the threshold.

So for those reasons, I am going to grant the defendant's motion for summary judgment, which would dismiss this matter with prejudice.

The court denied plaintiff's subsequent motion for reconsideration, finding plaintiff failed to show she inhaled an amount of ammonia significant enough to cause her collapse, essentially supplementing its original reasons in support of summary judgment.

Plaintiff appeals, arguing that there are genuine issues of material fact on the questions of breach of duty and causation which require a denial of summary judgment.

---

[1]  Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).

6

A-0720-24

## II.

Our review of a trial court's grant of a motion for summary judgment is de novo, applying the same standards the trial court used.  In re Est. of Jones, 259 N.J. 584, 594 (2025).  We consider "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party."  Jones, 259 N.J. at 594 (quoting Padilla v. Young Il An, 257 N.J. 540, 547 (2024)).

Our Supreme Court has held that:

> Summary judgment should be granted, in particular, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."
>
> [Friedman v. Martinez, 242 N.J. 449, 472 (2020) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).]

Rule 4:46-2(c) states a motion for summary judgment will be granted if: "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law."

A-0720-24

III.

A.

Plaintiff argues that the trial court committed error in its summary judgment analysis, finding no genuine issue of material fact on the questions of breach of duty and causation. We disagree.

"The fundamental elements of a negligence claim are [(1)] a duty of care owed by the defendant to the plaintiff, [(2)] a breach of that duty by the defendant, [(3)] injury to the plaintiff proximately caused by the breach, and [(4)] damages." Coleman v. Martinez, 247 N.J. 319, 337 (2021) (quoting Robinson v. Vivirito, 217 N.J. 199, 208 (2014)). "It is the obligation of the plaintiff to prove each element." Ibid. (citing Polzo v. Cnty. of Essex, 196 N.J. 569, 584 (2008)).

We require plaintiffs to "establish the existence of negligence 'by some competent proof,' because '[n]egligence is a fact which must be shown and which will not be presumed.' 'The mere showing of an incident . . . is not alone sufficient to authorize the finding of an incident of negligence.'" Franco v. Fairleigh Dickinson Univ., 467 N.J. Super. 8, 25 (App. Div. 2021) (alteration in original) (internal citations omitted) (first quoting Townsend v. Pierre, 221 N.J. 36, 51 (2015); and then quoting Long v. Landy, 35 N.J. 44, 54 (1961)).

A-0720-24

There is no dispute that defendant restaurant owed a duty of care to plaintiff as a business invitee.  See Stelluti v. Casapenn Enters., LLC, 203 N.J. 286, 306 (2010).  Also, there is no factual dispute between the parties that plaintiff fell outside the restaurant, sustaining injuries.  This leaves just two questions in the negligence analysis.  First, did plaintiff meet her burden on summary judgment to show defendant breached a duty of care to her?  Second, did plaintiff offer any material fact tending to prove a causal relationship between her inhalation of fumes from the blue liquid and her fall outside the restaurant?

B.

We address the breach of duty first.

"It is well recognized that the common law imposes a duty of care on business owners to maintain a safe premise[] for their business invitees because the law recognizes that an owner is in the best position to prevent harm." Stelluti, 203 N.J. at 306.  This requires a business owner "to guard against any dangerous conditions on [the] property that the owner either knows about or should have discovered[,] . . . [and] to conduct a reasonable inspection to discover latent dangerous conditions."  Id. at 307 (alterations in original) (quoting Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 434 (1993)).

9

Plaintiff offers no competent evidence, other than her own testimony, to establish: what the blue liquid substance she observed was, and what it was composed of; whether defendant's cleaning staff sprayed the blue liquid in a proper manner; and the size and ventilation of the hallway where she observed the liquid. There was no testimony that it was unreasonable for defendant's staff to use the blue liquid, or how its use created a dangerous condition. Plaintiff did not depose defendant or its agents, servants, or employees to ask what kind of solution cleaning staff used on the date of the accident.

Giving all reasonable inferences to plaintiff, she has failed to meet her burden to show a genuine issue of material fact which would tend to prove that defendant breached its duty of care through its cleaning personnel improperly using an unidentified blue liquid, or even an ammonia-based solution to clean its floors. Plaintiff's own testimony about the presence of ammonia in the hallway is unsupported by facts and represents self-serving testimony, insufficient to defeat summary judgment.[2] See Hoffman v. AsSeenOnTV.Com, Inc., 404 N.J. Super. 415, 425-26 (App. Div. 2009)

---

[2] "'[C]onclusory and self-serving assertions' in certifications without explanatory or supporting facts will not defeat a meritorious motion for summary judgment." 404 N.J. Super. at 425-26 (quoting Puder v. Buechel, 183 N.J. 428, 440 (2005)).

C.

We turn to causation.

When we consider proximate cause, we ask "whether the actual harm suffered was a reasonable consequence of the defendant's actual act or omission." Coleman, 247 N.J. at 355 (citing Clohesy v. Food Circus Supermarkets, Inc., 149 N.J. 496, 503 (1997)).

To prove proximate cause, we have held that:

> [P]laintiffs bear the burden to introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result. A mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant.
>
> [Vizzoni v. B.M.D., 459 N.J. Super. 554, 575 (App. Div. 2019) (quoting Townsend, 221 N.J. at 60-61) (internal quotation marks omitted).]

"[A]lthough plaintiffs bear the burden of proving causation, 'they are not obliged to establish it by direct, indisputable evidence.' Instead, '[t]he matter may rest upon legitimate inferences, so long as the proof will justify a reasonable and logical inference as distinguished from mere speculation.'" Thorn v. Travel Care, Inc., 296 N.J. Super. 341, 347 (App. Div. 1997) (second alteration in original) (internal citation omitted) (quoting Kulas v. Pub. Serv. Elec. & Gas

11

Co., 41 N.J. 311, 319 (1964)). "Proximate cause is a factual issue, to be resolved by the jury after appropriate instruction by the trial court." Maison v. NJ Transit Corp., 460 N.J. Super. 222, 234 (App. Div. 2019) (quoting Scafidi v. Seiler, 119 N.J. 93, 101 (1990)); see, e.g., Townsend, 221 N.J. at 59-60.

We note that "[p]roximate cause may . . . be removed from the jury's determination if causation depends on the validity of an expert's report." Vizzoni, 459 N.J. Super. at 576 (citing Townsend, 221 N.J. at 57-58; Dawson v. Bunker Hill Plaza Assocs., 289 N.J. Super. 309, 324 (App. Div. 1996)). We have also held that expert testimony on the topic of proximate cause is necessary when it is outside a juror's common knowledge. Quail v. Shop-Rite Supermarkets, Inc., 455 N.J. Super. 118, 135 (App. Div. 2018) (citing 2175 Lemoine Ave. Corp. v. Finco, Inc., 272 N.J. Super. 478, 490 (App. Div. 1994)).

Following N.J.R.E. 703, "[t]he net opinion rule . . . mandates that experts 'be able to identify the factual bases for their conclusions, explain their methodology, and demonstrate that both the factual bases and the methodology are reliable.'" Townsend, 221 N.J. at 55 (quoting Landrigan v. Celotex Corp., 127 N.J. 404, 417 (1992)). However, we exclude "[a]n expert's conclusion . . . 'if it is "based merely on unfounded speculation and unquantified possibilities."'" Ibid. (quoting Grzanka v. Pfeifer, 301 N.J. Super. 563, 580

(App. Div. 1997)) (internal quotation marks omitted).  As such, "unsubstantiated expert testimony cannot provide to the factfinder . . . a qualified specialist's reliable analysis of an issue 'beyond the ken of the average juror.'"  Ibid. (quoting Polzo, 196 N.J. at 582).

Plaintiff argues that her expert, Dr. Elkholy, rendered an opinion that establishes a nexus between plaintiff's collapse and the blue liquid she saw being sprayed in defendant's restaurant, thereby establishing proximate cause.  We are not persuaded.

Dr. Elkholy's report states in pertinent part:

> As you are aware, I have been practicing medicine for over 30 years.  Attached is one of several articles/treatises from the University of Florida Health, confirming the toxic side effects of the sudden presence of ammonia, wherein same is unanticipatedly inhaled.  It is a foreseeable consequence, that an individual will suddenly experience a medical calamity, dizziness, and collapse.  The attached treatises collaborate the foreseeable medical problem that immediately follows, as was the case for [plaintiff] on 06/05/22.

To support his opinion, Dr. Elkholy relied on a two-page University of Florida Health toxicology article which was appended to his report.  Dr. Elkholy conducted no testing at the restaurant, did not review any records of the composition of the blue liquid, and reviewed no toxicological reports of plaintiff after her exposure to the blue liquid.  He had no factual basis to reach any

13

conclusions about what plaintiff was exposed to, for how long, or how and if it affected her in any way. As the trial court stated, "[t]here could have been other reasons why plaintiff felt like she was going to pass out." Absent competent evidence of what the blue liquid consisted of, and a toxicology report to show what plaintiff had inhaled, Dr. Elkholy's opinion is without foundation and is a net opinion. Plaintiff's claim on causation cannot survive summary judgment.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

14