**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4593-17T4

GEORGE CONSTANTINOPOULOS,

      Plaintiff-Appellant/
      Cross-Respondent,

v.

MORGAN REALTY &
DEVELOPMENT, LLC, d/b/a
CHANNEL CLUB MARINA,
BLUE WATER MARINE
REPAIRS, INC., BORIS
ONEFATER, GREGORY
SHIFFNER, and RICHARD
WOLL,

      Defendants-Respondents/
      Cross-Appellants,

and

CERTAIN UNDERWRITERS
AT LLOYD'S, LONDON and
TARHEEL ENTERPRISES, INC.,

      Defendants.

_____

Submitted November 21, 2019 – Decided June 12, 2020

Before Judges Alvarez, Suter and DeAlmeida.

On appeal from the Superior Court of New Jersey,
Law Division, Monmouth County, Docket No. L-4529-
13.

Scarinci & Hollenbeck, LLC, attorneys for
appellant/cross-respondent (Charles A. Yuen, of
counsel and on the briefs).

James Harry Rohlfing attorney for respondents/cross-
appellants Morgan Realty and Development, LLC and
Blue Water Marine Repairs, Inc. (James Harry
Rohlfing, on the joint briefs).

Cozen O'Connor, attorneys for respondent/cross-
appellant Boris Onefater (Michael Anthony Savino and
William A. Lesser, on the joint briefs).

Finazzo Cossolini O'Leary Meola & Hager, LLC,
attorneys for respondents/cross-appellants Gregory
Shiffner and Richard Woll (Rachel R. Hager, on the
joint briefs).

PER CURIAM

Plaintiff George Constantinopoulos appeals the April 30, 2018 order

dismissing his complaint against defendants Morgan Realty & Development,

LLC, d/b/a, Channel Club Marina (Marina), and Blue Water Marine Repairs,

Inc., Boris Onefater, Gregory Shiffner and Richard Woll. Defendants cross-

appeal from orders denying their motions for summary judgment, which we now

reverse, because plaintiff did not show the alleged negligence of defendants was

A-4593-17T4

the proximate cause of his damages. Therefore, we affirm dismissal of the complaint, but on grounds different from the trial court. See Do-Wop Corp. v. City of Rahway, 168 N.J. 191, 199 (2001) (providing "appeals are taken from orders and judgments and not from opinions, oral decisions, informal written decisions, or reasons given for the ultimate conclusion").

I.

In October 2012, plaintiff owned a house in Monmouth Beach near an estuary of the Shrewsbury River. The house was across the estuary from defendant Marina. During Superstorm Sandy, plaintiff's house was extensively damaged.

Defendant Morgan owned and operated the Marina, which leased boat docks on the Shrewsbury River and winter storage spaces in its parking lot. The Great Escape was a thirty-seven-foot Formula boat owned by defendant Boris Onefater. Horsin' Around was a thirty-three-foot Sea Swirl boat owned by defendants Greg Shiffner and Richard Woll.

Morgan contracted with defendant Blue Water to take boats out of the water for storage at the Marina where they then were placed on concrete blocks or jack stands in the parking lot area. Horsin' Around was stored there, having

not been in the water all season. The Great Escape was stored a few days before Superstorm Sandy made landfall.

Both vessels were placed on cement blocks. Neither was secured by ropes. Blue Water tied some of the very small boats to a tree. Boats that stayed in the water were "tied down for every occasion" and were "double lined" as Sandy approached.

In 1992, there had been a significant storm and some of the smaller boats stored in the Marina's parking area "came off their blocking" due to flood waters. At that time, none drifted away from the Marina.

Beginning on October 25, 2012, the Monmouth Beach Office of Emergency Management (OEM) warned that coastal flooding from Sandy could be severe, and could equal or exceed the flooding in 1992. Sandy struck New Jersey on October 29, 2012. Austin L. Dooley, a meteorologist, certified that Sandy's storm surge "was extensive across the area with inundation high water marks" at the Marina "as high as 4.1 feet above ground level depending on location and height of the ground." This was a higher storm surge than the 1992 storm.

All fifty-four boats stored on land at the Marina—including the Horsin' Around and The Great Escape—"were carried away from their original storage

locations" as a "result of the historic tidal surge." Some of the boats that remained moored in the water with extra lines "broke their lines" and were either "sunk," "up on the docks" or "were at the marina next door." The boats tied to the tree "broke the lines and floated away."

The Great Escape came to rest on a fence separating plaintiff's property from a neighbor. It was extensively damaged. Horsin' Around was found partly on Monmouth Parkway, the road in front of plaintiff's house, and on a neighbor's yard. It had a broken side windscreen, a few "shallow scratches to the gelcoat," damage to the bottom of the outboard but no significant fiberglass damage or punctures to the hull.

Plaintiff alleges The Great Escape and Horsin' Around struck his house during Sandy, causing extensive damages. Phil Odom, an investigator retained by plaintiff, opined from photographs of The Great Escape, which had been repaired before his inspection, and from an inspection of Horsin' Around a year after Sandy, that both boats were scratched and gouged, indicating they "repeatedly collided with fixed objects." Color transfers on both boats were consistent with paint and wood on plaintiff's house. A glass fragment found in one of gutters was made from safety glass and was the same thickness as those from the Horsin' Around. Odom concluded the physical damage to plaintiff's

house was consistent with "boats having hit it" because the house's back door would not open, an entire room was ripped off and the concrete slab was gouged "consistent with a propeller strike." He opined Horsin' Around made contact with the gutter and downspout at the rear of the house based on the glass fragment. Both boats had paint transfers consistent with the house colors. He did not rule out that other boats or plaintiff's floating dock may have come in contact with plaintiff's house. He did not express an opinion on whether the boats were secured properly.

Boats in a nearby marina in Oceanport marina were tied together in a "spider web" fashion, and then to a bulkhead and other objects in preparation for the storm. Boats in this marina came off their blocks but did not leave the property. Sailboats at a nearby sailing center were piled up, and some of those did leave that location.

Plaintiff claimed damages from defendants of $955,600. He received payments for these damages totaling $1,378,500, which included $990,000 from the sale of the house and payments from FEMA and Lloyds of London.

Plaintiff's complaint against defendants, filed in November 2013, alleged trespass, negligence, and gross negligence. Plaintiff claimed defendants did not take reasonable measures to move the boats to safe ground or to secure them

A-4593-17T4

prior to Sandy, and that his property was damaged as a result. The complaint, amended in June 2014, added defendants Blue Water and Tarheel.[1]

A case management order required plaintiff to produce expert reports by January 30, 2015, and defendants by March 20, 2015. Defendants filed motions for summary judgment in August 2015. In September 2015, plaintiff filed a cross-motion for partial summary judgment to strike defendants' "act of God" defense. He also filed a motion to bar defendants' expert reports as net opinions.

With a trial date of December 7, 2015, plaintiff notified defendants on November 2, 2015, he was amending his interrogatories to include a report by Donald Pybas, P.E. Pybas opined that defendants were "grossly negligent in failing to plan and to move and to secure the boats and their negligence caused the boats to float away during storm Sandy." He noted the boats were not secured, the Marina was close to the ocean and had flooded before, defendants retained control over the boats and how they were stored, they did not tie the boats to other objects or measure the height of the jack stands and cinder blocks "against a reasonable range of anticipated storm surge."

---

[1] Defendant Lloyd's settled with plaintiff and was removed from the complaint along with associated claims for breach of contract. Defendant Tarheel has settled.

Defendants filed a motion to bar Pybas' testimony, which plaintiff opposed.

On January 13, 2016, the trial court denied all the motions for summary judgment, concluding "a reasonable jury could conclude that [d]efendants were negligent in their preparations for" Sandy. Plaintiff's cross-motion for partial summary judgment was rejected because the trial court determined "a reasonable jury could find that Sandy constituted an Act of God which absolved them of liability." On the same date, the trial court denied plaintiff's motion to bar defendants' expert reports, finding they were not net opinions. And, it denied defendants' motion to bar Prybas' testimony.

In March 2016, defendants again moved to bar Pybas' testimony. In granting the motion in March 2017, the court provided there was "[n]o valid legal basis for submission of a late report" and it was denied for reasons set forth in the motion. Reconsideration was denied in July 2017.

Plaintiff filed in limine motions raising, among other issues that references at trial to plaintiff's collateral resources and recoveries should be barred. The court's December 7, 2017 order barred defendants from making any reference to plaintiff's receipt of monies from collateral sources, but any verdict in favor of plaintiff would be reduced by those amounts. This included monies received by plaintiff for the sale of the house.

A-4593-17T4

In a subsequent hearing, the trial court found that monies plaintiff received from other sources exceeded the maximum amount of the damages he was seeking from defendants. Therefore, on April 30, 2018, the court dismissed the case with prejudice, reasoning that "this plaintiff could not receive any further damages in this claim."

Plaintiff appeals the April 30, 2018 dismissal order raising these issues:

POINT I

THE TRIAL COURT INCORRECTLY DENIED PARTIAL SUMMARY JUDGMENT TO THE PLAINTIFF.

POINT II

THE TRIAL COURT INCORRECTLY DENIED THE PLAINTIFF THE BENEFIT OF THE COMMON LAW RULE DENYING TORTFEASORS THE BENEFIT OF A PLAINTIFF'S INDEPENDENT COLLATERAL SOURCE RECOVERIES.

POINT III

THE TRIAL COURT'S DENIAL OF PLAINTIFF'S MOTION TO STRIKE REPORTS OF THE EXPERT WITNESSES SUBMITTED BY DEFENDANTS WITH SUMMARY JUDGMENT MOTIONS SHOULD BE VACATED AND REVERSED.

POINT IV

THE TRIAL COURT'S BARRING OF PLAINTIFF'S EXPERT WITNESS DONALD BYPAS DID NOT

9

FOLLOW THE LAW OF THE CASE AND SHOULD BE REVERSED.

Defendants filed cross-appeals raising these issues:

POINT I

PLAINTIFF CONSTANTINOPOULOS WAS NOT ENTITLED TO PARTIAL SUMMARY JUDGEMENT [sic] BASED ON THE "ACT OF GOD" DEFENSE[.]

A. The "Act Of God" Defense Is Not Grounds For Plaintiff's Partial Summary Judgement [sic].

B. Defendants Presented Sufficient Evidence Showing They Acted Reasonably.

C. Judge Quinn's Denial of "Partial Summary Judgement [sic]" Based On the "Act Of God" Doctrine Had No Effect On The Case.

POINT II

THE COURT CORRECTLY CONSIDERED PLAINTIFF'S COLLATERAL SOURCES OF RECOVERY AND DISMISSED PLAINTIFF'S CLAIMS AS BEING AN IMPERMISSIBLE DOUBLE RECOVERY[.]

POINT III

THE LAW-OF-THE-CASE DOCTRINE IS INAPPLICABLE TO INTERLOCUTORY DISCOVERY RULINGS BY A SINGLE JUDGE AND JUDGE QUINN DID NOT ABUSE HIS DISCRETION BY PRECLUDING A LATE-DISCLOSED EXPERT[.]

POINT IV

JUDGE QUINN DID NOT ABUSE HIS DISCRETION IN DENYING PLAINTIFF'S MOTION TO STRIKE REPORTS OF CERTAIN EXPERT WITNESSES[.]

A.  Report of A. William Gross, III.

B.  Report of Anthony M. Dolhon, P.E. (co-authored by Wayne G. Hubbard and Adam Dershowitz of Exponent).

C.  Report of Robert P. Stefanowicz.

D.  Report of Gregory T. Davis and Zdenek Hejzlar.

E.  Report of Dana P. Collyer.

F.  Report of Austin L. Dooley.

POINT V

THE TRIAL COURT ERRED IN NOT GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND BY NOT LIMITING THE PLAINTIFF'S DAMAGES TO THE COST OF NEW GUTTERS SINCE PLAINTIFF FAILED TO PROVIDE CREDIBLE EVIDENCE THAT ANY DAMAGE BEYOND THE GUTTERS WAS ATTRIBUTABLE TO ANY BOAT FROM THE BLUE WATER MARINA[.]

POINT VI

THE TRIAL COURT SHOULD HAVE GRANTED DEFENDANTS' MOTION FOR SUMMARY JUDGEMENT [sic] SINCE PLAINTIFF CANNOT PROVE A DUTY OR BREACH OF THAT DUTY[.]

11

POINT VII

THE TRIAL COURT SHOULD HAVE GRANTED
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT BECAUSE THERE IS NO QUESTION
THAT SANDY, THE SECOND LARGEST
ATLANTIC STORM ON RECORD, CONSTITUTED
AN ACT OF GOD AND PROVIDES [DEFENDANT]
WITH AN ABSOLUTE DEFENSE TO PLAINTIFF'S
CLAIM FOR DAMAGES

We asked for, and received, supplemental briefing by the parties to address three questions:

> (1) Does plaintiff's burden to establish causation require evidence that securing the two boats in issue using ties or other means more likely than not would have prevented them from floating free and leaving the marine property?
>
> (2) Is there evidence in the record that could support a finding of fact on this point?
>
> (3) Is expert testimony required to establish this point?

## II.

We review a court's grant of summary judgment de novo, applying the same standard as the trial court. Conley v. Guerrero, 228 N.J. 339, 346 (2017). Summary judgment must be granted if "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the

moving party is entitled to a judgment or order as a matter of law." Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016) (quoting R. 4:46-2(c)).

Plaintiff's complaint alleged negligence. This required plaintiff to prove four elements by a preponderance of the credible evidence: "(1) a duty of care, (2) a breach of that duty, (3) proximate cause, and (4) actual damages." Townsend v. Pierre, 221 N.J. 36, 51 (2015) (quoting Polzo v. Cty. of Essex, 196 N.J. 569, 584 (2008)).

Plaintiff argued defendants breached their duty of care to plaintiff by not securing the boats ahead of the storm because the parking lot had flooded in the past. Plaintiff argued an expert was not required to determine the duty owed by defendants because this issue was not technical in nature.

"The question of whether a duty to exercise reasonable care to avoid the risk of harm to another exists is one of fairness and policy that implicates many factors." Vizzoni v. B.M.D., 459 N.J. Super. 554, 568 (App. Div. 2019) (quoting Carvalho v. Toll Bros. & Developers, 143 N.J. 565, 572 (1996)). "Foreseeability of the risk of harm is the foundational element in the determination of whether a duty exists." Ibid. (quoting J.S. v. R.T.H., 155 N.J. 330, 337 (1998)). Whether there is a duty "involves identifying, weighing, and balancing several factors—

the relationship of the parties, the nature of the attendant risk, the opportunity and ability to exercise care, and the public interest in the proposed solution." Id. at 569 (quoting Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 439 (1993)).

We agree with the trial court that defendants had a duty to take reasonable precautions in light of the oncoming storm, and that it was foreseeable others outside the Marina could be at risk of harm by unmoored boats. But the extent and nature of reasonable precautions needed to be informed by expert testimony, because the issues were beyond the knowledge of the average juror. See Butler v. Acme Mkts. Inc., 89 N.J. 270, 283 (1982) (providing that expert testimony is required when "the matter to be dealt with is so esoteric that jurors of common judgment and experience cannot form a valid judgment as to whether the conduct of the party was reasonable"). Plaintiff was required to have expert testimony on these issues.

More critically, plaintiff was required to show that defendants' negligence was the proximate cause of the boats leaving the Marina and causing his damages. See O'Brien (Newark) Cogeneration, Inc. v. Automatic Sprinkler Corp. of Am., 361 N.J. Super. 264, 274 (App. Div. 2003) (citing Paxton v. Misiuk, 34 N.J. 453, 463 (1961)) (providing that a plaintiff must prove "not only that defendant was negligent, but also that defendant's negligence was a

A-4593-17T4

proximate cause of the injuries and damages suffered"). "Proximate cause consists of 'any cause which in the natural and continuous sequence, unbroken by an efficient intervening cause, produces the result complained of and without which the result would not have occurred.'" Vizzoni, 459 N.J. Super. at 568 (quoting Conklin v. Hannoch Weisman, 145 N.J. 395, 418 (1996)). "[A] plaintiff must show that a defendant's conduct constituted a cause-in-fact of his injuries." Id. at 574 (alteration in original) (quoting Dawson v. Bunker Hill Plaza Assocs., 289 N.J. Super. 309, 322 (App. Div. 1996)). "[A]n act or omission is not regarded as a cause-in-fact of an event if the event would have occurred without such act or omission." Thorn v. Travel Care, Inc., 296 N.J. Super. 341, 346 (App. Div. 1997) (citing Kulas v. Pub. Serv. Elec. & Gas Co., 41 N.J. 311, 317 (1964)). The question is whether the omission is a substantial factor in bringing about the injury or damage. Ibid. The Supreme Court stated in Townsend:

> to prove the element of causation, plaintiffs bear the burden to ["]introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result. A mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant.["]

15

[221 N.J. at 60-61 (quoting Davidson v. Slater, 189 N.J. 166, 185 (2007)).]

We asked the parties to address causation in the three questions we posed. We have carefully reviewed the responses and the record, concluding that plaintiff has not demonstrated the manner in which defendants' alleged negligence was the cause in fact of the damage. It was plaintiff's burden to show through expert testimony that there was a feasible method by which defendants could have prevented the boats from floating away from the Marina during Superstorm Sandy. Plaintiff did not provide a reasonable basis to conclude that if the boats had been secured by any of the means they suggested that this more likely than not would have prevented these two boats from breaking free in the storm surge caused by Superstorm Sandy.

A typical juror would not know about the power of the storm surge from Sandy, or whether these boats could be secured in a manner to withstand this. Plaintiff never addressed this issue; he simply assumed that if the boats were tied up, they would not have gone free.

Plaintiff's experts did not address this issue. Odom concluded the boats more than likely struck the house. He did not express any opinion on the way they were stored or secured. Plaintiff's other proposed expert, Pybas, whose testimony was excluded, opined that defendants might have attempted to tie the

boats to physical objects or to other boats, but did not opine that this was a feasible alternative in this storm. Therefore, whether or not his testimony was excluded, he did not directly address proximate cause.[2]

This is not a res ipsa loquitur case as plaintiff argues. "Res ipsa loquitur is an equitable doctrine that allows, in appropriate circumstances, a permissive inference of negligence to be drawn against a party who exercises exclusive control of an instrumentality that malfunctions and causes injury to another." McDaid v. Aztec W. Condo. Ass'n, 234 N.J. 130, 135 (2018). There are three elements: "(a) the occurrence itself ordinarily bespeaks negligence; (b) the instrumentality was within the defendant's exclusive control; and (c) there is no indication in the circumstances that the injury was the result of the plaintiff's own voluntary act or neglect." Jerista v. Murray, 185 N.J. 175, 192 (2005) (quoting Buckelew v. Grossbard, 87 N.J. 512, 525 (1981)). The fact that the boats floated free during the storm surge of a hurricane did not mean there was negligence nor were the boats exclusively within defendants' control once the hurricane struck.

---

[2] Plaintiff argues Pybas' testimony should not have been barred based on the law of the case doctrine, but that doctrine "is entirely inapposite" in circumstances such as here where "the same judge is reconsidering his own interlocutory ruling." Lombardi v. Masso, 207 N.J. 517, 539 (2011). Also, plaintiff never asked to extend the discovery deadlines on this issue.

A-4593-17T4

In The Louisiana, the Supreme Court held that a drifting vessel "is conclusive evidence that she was not sufficiently and properly secured" and "must be liable for the damages . . . unless she can show affirmatively that the drifting was the result of inevitable accident." 70 U.S. 164, 173-74 (1865). That holding does not apply here. This is not an admiralty case; the boats were not in navigable water but were stored on land. See 46 U.S.C. § 30101 (extending admiralty jurisdiction to cases of injury or damage caused by a vessel on navigable waters where the injury or damage is done on land).

That some other boats in other marinas did not leave the property has no bearing on the negligence of this Marina. Plaintiff did not establish whether the storm surge, wind conditions, types of boats, and geography were comparable. An expert is necessary for this comparison.

Defendants were entitled to summary judgment dismissing the complaint because plaintiff did not prove that defendants' alleged negligence was the proximate cause of his damages. Because this issue is dispositive, we have not addressed the other issues raised by the parties.

The orders denying defendants' motions for summary judgment are reversed and summary judgment is entered in favor of defendants against plaintiff.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

18